DAVID T. ZUSSMAN, trustee, vs. RENT CONTROL BOARD OF BROOKLINE & others. [1]

Norfolk.   February 5, 1975. — April 30, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Rent Control.   Municipal Corporations,* Rent control.   *Equity Juris-diction,* Review of action of rent control board.   *Real Property,* Condominium.   *Administrative Board.*

The rent control board of a town was exempt under G. L. c. 231, § 98, from filing a bond upon appealing to the Superior Court from a decision of a Municipal Court. [565]

Where a surety appeal bond filed under G. L. c. 231, § 98, was inadvertently not signed by the principals, the Superior Court under c. 231, § 51, and c. 235, § 4, was authorized to allow them to sign it after the time for filing it had expired. [565]

Conversion of rental units controlled under St. 1970, c. 842, into condominiums by a piecemeal, unit by unit, process was consistent with a purpose of the statute to accommodate it to a policy of encouraging home ownership, even if there was some rehabilitation or "optional upgrading" of the units in the conversion, so that certificates of eviction to accomplish it would be for "just cause" and should be issued under § 9 (a) (10). [566-567]

Regulations promulgated by the rent control board of a town, which had the purpose and effect of preventing conversion of controlled rental units into condominiums, did not "further the provisions" or "effectuate the purposes" of St. 1970, c. 842, and were not within the authority of the board under §§ 5 (c), 5 (e). [567-569]

COMPLAINT filed in the Municipal Court of Brookline on November 1, 1972.

On appeal to the Superior Court, the case was heard by *Mitchell, J.*

---

[1] Seventeen tenants of apartment buildings owned by Zussman.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Judith E. Soltz* (*Roger R. Lipson* with her) for the Rent Control Board of Brookline.

*Robert J. Muldoon* (*Jeremiah F. Healy, III, & Earl Auerbach* with him) for Earl Auerbach & others.

*Sidney Heimberg* for David T. Zussman, trustee.

BRAUCHER, J. A Brookline landlord, subject to rent control under St. 1970, c. 842 (the Act), sought certificates of eviction for the purpose of converting "controlled rental units" into condominiums. The Rent Control Board of Brookline (the board) denied the applications, and the landlord sought judicial review. Like the Municipal Court of Brookline and the Superior Court, we hold that in the circumstances "the landlord seeks to recover possession for . . . just cause," that "his purpose is not in conflict with the provisions and purposes" of the Act, and that the certificates of eviction should therefore issue under § 9 (a) (10) of the Act.

We summarize the judge's findings, which were largely based on a statement of agreed facts. The Act took effect in Brookline in 1970,[2] and the board was duly established under § 5. The plaintiff Zussman as trustee is the owner of a total of fifty-six "controlled rental units." Master condominium deeds covering the premises were recorded in May and September, 1972, pursuant to G. L. c. 183A; existing tenants were given preferential opportunities to buy; purchase and sale agreements were made with purchasers who were not tenants and who intended to occupy the units; and applications were made to the board for certificates of eviction. On August 29, 1972, the board voted "guidelines" for such cases and granted Zussman a certificate of eviction, and a second certificate was granted in September.

---

[2] Statute 1974, c. 360, extended the termination date of the Act to December 31, 1975.

On October 17, 1972, however, the board postponed further consideration of such applications until after a public hearing on the subject. The public hearing was held on November 29, 1972, and on January 30, 1973, the board promulgated an "Emergency Regulation" on certificates of eviction in cases of conversion of controlled rental units into condominiums. Meanwhile, Zussman had filed twenty-seven more applications for such certificates. After hearings in February and March, those applications were denied by reason of lack of compliance with the "Emergency Regulation." A new regulation, supplanting the "Emergency Regulation," was promulgated on March 20, 1973.

Zussman borrowed $950,000 in construction and permanent financing, refurbished hallways, improved electrical systems, and modernized units as they became vacant. He demonstrated his willingness to do all work in a manner least likely to inconvenience the tenants, and offered each tenant a preferential opportunity to buy at a lower price than that offered to the public, including favorable financing and an offer to repurchase after two years at the same price if the purchaser was dissatisfied. He has offered any tenant not desiring to purchase a full year to vacate. Because of his inability to recover possession, he has lost sales and has returned deposits.

Zussman sought judicial review in the Municipal Court of Brookline, naming the board and twenty-six tenants as defendants, and a judge of that court ordered the issuance of the certificates applied for and denied. The board and twenty-six tenants filed timely notice of appeal to the Superior Court, and they filed a bond with corporate surety in the amount of $100 under G. L. c. 231, § 98, and Rule 42 of the Rules of the District Courts (1965). By "ministerial oversight" the bond was not signed by the board or the tenants as principals. After the time for filing the bond had expired, a judge of the Superior Court allowed the board and the tenants to

sign the bond and to obtain ratification by the surety, and denied Zussman's motions to dismiss the appeals.

After trial another Superior Court judge ruled that the landlord was not seeking "to recover possession to demolish or otherwise remove the unit from housing use" under § 9 (a) (9) of the Act. As to § 9 (a) (10), authorizing eviction for "just cause," if the landlord's "purpose is not in conflict with the provisions and purposes" of the Act, he ruled that the board's "guidelines" of August, 1972, were reasonable, that the "Emergency Regulation" of January, 1973, could not be "retroactively" applied to Zussman's pending applications, and therefore that the applications must be approved if they met the conditions of the "guidelines."

A final decree was entered on April 19, 1974, the important provisions of which are set forth in the margin.[3] The board and twenty-four of the tenants

---

[3] "This cause came on to be heard and was argued by counsel; and thereupon, upon consideration thereof, it is, ORDERED, ADJUDGED AND DECREED:

"That upon application by David T. Zussman, Trustee, acting as agent for a bona fide purchaser of a condominium unit at Marshall Place Condominiums, which application shall be accompanied by an executed purchase and sale agreement containing no re-purchase or option provisions, by and between the said Trustee and the said purchaser, in which agreement the purchaser shall represent that in good faith he is purchasing the unit for the use and occupancy of himself or his children, parents, brother, sister, father-in-law, mother-in-law, daughter-in-law or son-in-law, the Board of Rent Control of the Town of Brookline shall proceed expeditiously to process and approve said applications within thirty (30) days of their submission under Section 9 (a) (10) if the foregoing conditions are satisfied.

"Any certificate of eviction issued in accordance with the foregoing shall be issued to both David T. Zussman, Trustee of Sewall Trust and the said purchaser in the alternative. Upon the issuance of a certificate of eviction as aforesaid, summary process proceedings, if necessary, shall be brought in the Municipal Court of the Town of Brookline by said David T. Zussman, Trustee, or any subsequent Trustee of the Sewall Trust in his own name pursuant to the certificate of eviction issued as aforesaid and seeking possession of the premises for the purchaser of the unit for whom the trustee is acting as agent."

appealed, and the case was transferred to this court under G. L. c. 211A, § 10. The case is moot as to six tenants who have moved and as to one for whom no certificate of eviction was sought.

1. *The appeal bond.* Zussman aruges that the Superior Court lacked jurisdiction because the bond filed by the board and the tenants did not comply with G. L. c. 231, § 98.[4] We think, however, that the board was within the purpose and scope of the exception for "an appeal by a county, city, town or other municipal corporation," and was not required to file a bond. Cf. *Sherman* v. *Rent Control Bd. of Brookline, ante,* 1, 5-7 (1975). Moreover, the Superior Court had ample authority under G. L. c. 231, § 51, and c. 235, § 4, to permit correction of the defect. Cf. *Shour* v. *Henin,* 240 Mass. 240, 243 (1922); *Shaughnessy* v. *Board of Appeals of Lexington,* 357 Mass. 9, 14 (1970). We therefore do not consider what would be the proper course if no corrective action had been taken or if the Superior Court had dismissed the appeal. Cf. *Santom* v. *Ballard,* 133 Mass. 464, 465 (1882); *Putnam* v. *Boyer,* 140 Mass. 235, 237 (1885); *Snow* v. *Dyer,* 178 Mass. 393, 395-396 (1901). Nor do we consider whether Zussman has brought the question before us by a proper exception, or whether we would raise it on our own

---

[4] General Laws, c. 231, § 98 reads: "No appeal, other than an appeal by a county, city, town or other municipal corporation, from a judgment of a district court in any civil action or proceeding, except an action of summary process under chapter two hundred and thirty-nine, shall be allowed, except as provided in section ninety-nine, unless the appellant, within six days after the entry of judgment, or within such further time as the justice or clerk for cause shown allows, files a bond executed by him or by his attorney of record on his behalf, payable to the appellee in such reasonable sum and with such surety or sureties as may be approved by the appellee or by the justice or clerk, conditioned to enter and prosecute his appeal with effect, and to satisfy any judgment for costs which may be entered against him in the superior court upon said appeal within thirty days after the entry thereof."

motion as a jurisdictional question. Cf. *Gentile* v. *Rent Control Bd. of Somerville,* 365 Mass. 343, 346, n. 3 (1974).

2. *Conversion to condominiums as a permitted purpose.* The board and the tenants contend that this case is governed by *Mayo* v. *Boston Rent Control Admr.* 365 Mass. 575, 580 (1974). There we declared that a landlord's purpose of "optional upgrading" of controlled rental units was "in conflict with the provisions and purposes" of the Act, and therefore did not constitute "just cause" for eviction under § 9 (a) (10). The *Mayo* case would be more directly in point if the landlord here sought to evict his tenants in order to remove all the controlled rental units temporarily from the housing market, to upgrade them and then to reintroduce them into the housing market as condominiums for families with higher incomes. Cf. *Trovato* v. *Walsh,* 363 Mass. 533, 535-536 (1973). We do not rule on such a case. But the conversion proposed here is piecemeal, unit by unit, and we think it need not be in conflict with the provisions and purposes of the Act, even if there is some rehabilitation or "optional upgrading" in the process.

Several provisions of the Act indicate a purpose to accommodate the Act to a policy of encouraging home ownership. Exemptions from rent control are provided for certain types of home ownership. Section 3 (b) (4) (cooperatives); see *Danforth* v. *McGoldrick,* 201 Misc. (N. Y.) 480, 482-483 (1951). Section 3 (b) (6) (owner-occupied two or three family houses). Under § 9 (a) (8) a tenant may be evicted if the landlord seeks to recover possession "in good faith for use and occupancy of himself" or certain members of his family. Cf. *Yaffe* v. *Lappin,* 324 Mass. 254, 255 (1949). The board concedes that a purchaser of a condominium, once he has a deed, comes within this provision and could obtain a certificate of eviction. Under § 9 (a) (6) a tenant may be evicted if he "has refused reasonable access to the unit . . . for the purpose of showing the rental unit to any prospective

purchaser." Thus the Act contemplates eviction in the case of sales of rental premises to a purchaser who seeks to occupy them for his personal use. Cf. Housing and Rent Act of 1947, c. 163, § 209 (a) (2) and (3), 61 Stat. 200, as amended by Housing and Rent Act of 1948, c. 161, § 204 (a), 62 Stat. 98-99; *Abbott* v. *Bralove,* 176 F. 2d 64, 65 (D. C. Cir. 1949); *Tudor Arms Apartments* v. *Shaffer,* 191 Md. 342, 349 (1948).

Condominiums offer the city dweller significant advantages over rental housing. See Schwartz, Condominium: A Hybrid Castle in the Sky, 44 B. U. L. Rev. 137, 152 (1964). Condominium ownership may be well suited to the housing problems of low income families. See Teaford, Homeownership for Low Income Families: The Condominium, 21 Hastings L. J. 243, 285 (1970). The Legislature has provided for condominiums in G. L. c. 183A. We conclude that accommodation of the Act to a policy of encouraging home ownership in condominium form is not in conflict with its provisions and purposes.

3. *"Retroactivity."* Section 5 (c) of the Act gives the board authority to promulgate "such policies, rules and regulations as will further the provisions of the act," and § 5 (e) empowers it to "issue orders and promulgate regulations to effectuate the purpose of this act." See *Marshal House, Inc.* v. *Rent Review & Grievance Bd. of Brookline,* 357 Mass. 709, 714-715 (1970). There is no dispute in this case as to the propriety of the conditions of eviction for conversion to a condominium provided in the "guidelines" of August, 1972. See *McGoldrick* v. *Sterling,* 283 App. Div. (N. Y.) 88, 96 (1953); *Richards* v. *Kaskel,* 32 N. Y. 2d 524, 534 (1973). The "Emergency Regulation" of January, 1973, however, imposed additional, more onerous conditions, and Zussman contends, as the Superior Court judge ruled, that those requirements could not affect the pending applications. The board, on the other hand, contends that Zussman must now comply with the still more restrictive regulation of March, 1973.

In the view we take of the validity of the board's regu-
lations, we need not pass on the question of their "retro-
active" effect. It is proper to say, however, that it is
very doubtful whether the mere filing of an application
for a certificate of eviction could exempt the landlord
from reasonable policies adopted pursuant to the Act
while the application was pending. Cf. *Spector* v.
*Building Inspector of Milton*, 250 Mass. 63, 71 (1924);
*Caputo* v. *Board of Appeals of Somerville*, 330 Mass.
107, 111 (1953). The board appears to have been
proceeding cautiously in dealing with a new and
recurring problem. Once it arrived at a firm policy,
there was much to be said for applying that policy even-
handedly in all its subsequent decisions.

4. *Validity of the regulations.* The August, 1972,
"guidelines," whose propriety is not disputed, required
(1) recording of a master deed, (2) signing of a purchase
and sale agreement, (3) a first right in the tenant to
purchase on the same terms offered to the purchaser,
(4) sales for the use and occupancy of the purchaser, and
(5) a purchase and sale agreement without repurchase or
option provisions. The "Emergency Regulation" of
January, 1973, required in addition (1) a limitation on
the annual cost of the condominium, (2) a surety bond
for management and maintenance, (3) purchase and sale
agreements for at least fifty-one per cent of all the units
in the building, and (4) such "other requirements as the
Board deems necessary according to the circumstances of
a given case"; a purchaser could only apply if there was a
duly executed and recorded deed to him. The March,
1973, regulation does not permit an owner to obtain a
certificate of eviction in order to convert a unit to a
condominium or to sell it as a condominium; a purchaser
cannot obtain a certificate unless there is a duly executed
and recorded deed to him "for full consideration paid."
Legislative proposals for similar restrictions failed of
enactment in 1973. 1973 House Doc. Nos. 2821, 3602,
3778.

We think it is clear that both the "Emergency Regulation" of January, 1973, and the regulation of March, 1973, had the purpose and effect of preventing the conversion of controlled rental units into condominiums. Purchasers of condominiums would be ill-advised to make full payment for a unit without any assurance that possession could be recovered, and financing for the transaction could not be expected to be available. In view of what we have said, therefore, those regulations did not "further the provisions of the act" or "effectuate" its purposes, and they were not within the authority of the board. It follows that the Superior Court decree was a proper accommodation of the policies of the Act with the policy of encouraging home ownership.

*Decree affirmed.*