ALAN J. GRACE, trustee, & others[1] *vs.* TOWN OF BROOKLINE & others.[2]

Suffolk. May 8, 1979. — August 23, 1979.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Brookline. Municipal Corporations*, By-laws and ordinances, Rent control, Police power. *Rent Control. Real Property*, Condominium. *Housing. Constitutional Law*, Equal protection of laws. *Due Process of Law*, Taking of property.

Two amendments to the by-laws of the town of Brookline which rendered certificates of eviction unavailable to condominium developers and established, in the case of a condominium unit purchaser seeking to occupy, a six- to twelve-month delay in eviction of the tenant in possession were consistent with and authorized by St. 1970, c. 843. [49-52]

Two amendments to the by-laws of the town of Brookline which rendered certificates of eviction unavailable to condominium developers and established, in the case of a condominium unit purchaser seeking to occupy, a six- to twelve-month delay in eviction of the tenant in possession did not conflict with G. L. c. 183A. [52-53]

Two amendments to the by-laws of the town of Brookline which rendered certificates of eviction unavailable to condominium developers and established, in the case of a condominium unit purchaser seeking to occupy, a six- to twelve-month delay in eviction of the tenant in possession did not conflict with G. L. c. 239. [53-55]

Two amendments to the by-laws of the town of Brookline which rendered certificates of eviction unavailable to condominium developers and established, in the case of a condominium unit purchaser seeking to occupy, a six- to twelve-month delay in eviction of the tenant in possession did not constitute a taking without just compensation or a denial of equal protection of the laws. [55]

---

[1] Louise M. Lonabocker and Jonathan Ehrenworth.

[2] Rent control board of Brookline and the Attorney General, as defendant-intervener.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 3, 1978.

The case was reported by *Abrams, J.*

*Philip S. Lapatin & Mitchel S. Ross* for the plaintiffs.

*David Lee Turner*, Town Counsel, for the town of Brookline.

*Roger R. Lipson* for the Rent Control Board of Brookline.

*S. Stephen Rosenfeld*, Assistant Attorney General, for the Attorney General.

LIACOS, J. A condominium developer, a condominium owner and a potential condominium purchaser challenge, as unauthorized by statute and prohibited by the Massachusetts and the United States Constitutions, two amendments to art. XXXVIII of the by-laws of the town of Brookline. The disputed amendments protect tenants by regulating the procedure for their eviction from apartments converted into condominium units. We uphold their validity.

The plaintiffs filed a complaint in the county court for declaratory and injunctive relief on November 3, 1978. On November 10, 1978, a single justice of this court denied the plaintiffs' request for a preliminary injunction, and allowed a motion by the Attorney General of the Commonwealth to intervene as a party-defendant.[3] The parties subsequently submitted a stipulation of facts, and on March 6, 1979, a single justice reserved and reported the case for decision by the full bench.

The pertinent facts stipulated are as follows. From 1970 until December 31, 1975, the town of Brookline generally regulated and controlled rents and evictions under the general rent control enabling provisions of St. 1970, c. 842. On December 16, 1975, a Brookline special town meeting

---

[3] The basis set forth in the Attorney General's motion was that the challenged by-law amendments had been approved by him pursuant to G. L. c. 40, § 32. See G. L. c. 12, § 3; Mass.R.Civ.P. 24 (d), 365 Mass. 769 (1974); *Feeney* v. *Commonwealth*, 373 Mass. 359 (1977).

rescinded its approval of c. 842. In its place, under the authority specifically granted to Brookline by St. 1970, c. 843,[4] the town meeting adopted art. XXXVIII of the Brookline by-laws (referred to hereafter as the "by-law"). Brookline has regulated rents and evictions pursuant to c. 843 and the by-law since January 1, 1976.

Section 9 (a) of the by-law enumerates the bases on which the rent control board may issue certificates of eviction with regard to rent-controlled housing units. Prior to July 25, 1978, § 9 (a) provided two grounds for eviction of tenants residing in rent controlled apartments which were slated

---

[4] The statute states, in pertinent part: "An Act to provide for the establishment and administration of rent regulation and the control of evictions in housing accommodations in the town of Brookline. . . . SECTION 1. *Declaration of Emergency.* The general court finds and declares that a serious public emergency exists in the town of Brookline with respect to the housing of a substantial number of the citizens of said town, which emergency has been created by housing demolition, an expanding student population, a substantial elderly population, deterioration of a substantial portion of the existing housing stock, insufficient new housing construction, increased costs of construction and finance, inflation and the effects of the Vietnam conflict, and which has resulted in a substantial and increasing shortage of rental housing accommodations and in abnormally high rents; that unless residential rents and eviction of tenants are regulated and controlled, such emergency and the further inflationary pressures resulting therefrom will produce serious threats to the public health, safety and general welfare of the citizens of Brookline, particularly families of low and moderate income and elderly on fixed income; that such emergency should be met by the commonwealth immediately and with due regard for the rights and responsibilities of Brookline. SECTION 2. *General Powers.* The town of Brookline may, by by-law, regulate rents for the use or occupancy of housing accommodations in the town, establish a rent board for the purpose of regulating rents, minimum standards for use or occupancy of housing accommodations in the town and evictions of tenants from such housing accommodations and may, by by-law, require registration by owners of housing accommodations under penalty of perjury of information relating to the housing accommodations. Such rents, standards and evictions may be regulated by the rent board so as to remove hardships or correct inequities for both the owner and tenants of such housing accommodations. The rent board shall have all powers necessary or convenient to perform its functions. It may make rules and regulations. . . . SECTION 6. *Defense to Summary Process for Possession.* The town of Brookline may by by-law regulate the evictions of tenants. . . ."

for, or had already undergone, conversion to condominiums.[5] Section 9(a)(8) allowed a landlord to obtain a certificate of eviction if he sought to occupy a unit for himself or a member of his immediate family; § 9(a)(10) authorized a landlord to bring an action to recover possession of a unit "for any other just cause." The first of these provisions permitted a purchaser of a newly converted condominium unit who sought occupancy to apply for a certificate of eviction. The second allowed a developer to seek certificates of eviction for an entire building intended for conversion to condominium units. The rent control board of Brookline[6] routinely granted developers such certificates upon compliance with particular guidelines it had promulgated.

On July 25, 1978, a special town meeting of Brookline voted[7] to amend § 9(a)(8) and (10) of the by-law.[8] The

---

[5] For the statutory description of condominiums in this Commonwealth, see generally G. L. c. 183A.

[6] The establishment of the board was authorized by § 4 of the by-law.

[7] The record before the meeting included the selectmen's recommendation, an advisory committee's recommendation, and the report of the planning board. Each of these statements, reflecting serious concern over the dislocation of tenants and decreased availability of low and moderate income housing which result from condominium conversion, urged adoption of the amendments as a remedial measure.

[8] The provisions, as amended, read: "*Section 9. Evictions.* (a) No person shall bring any action to recover possession of a controlled rental unit unless: (8) the landlord seeks to recover possession in good faith for use and occupancy of himself or his children, parents, brother, sister, father-in-law, mother-in-law, son-in-law or daughter-in-law, *except that if the unit is a condominium unit occupied by a tenant who was in possession thereof at the time the landlord acquired ownership, then the Board shall not issue a Certificate of Eviction hereunder for a period of six months from the date when the Board determines that the facts attested to in the Landlord's Petition are valid and in compliance herewith; and if the Board determines that a hardship exists, then the Board may extend the period between the determination of validity and compliance hereunder and the date for issuance of the Certificate for an additional period of up to six months. . . .* (10) the landlord seeks to recover possession for any other just cause, provided that his purpose is not in conflict with the provisions and purposes of this act. *The submission of a unit to Chapter 183A of the*

effect of the amendment to § 9(a)(10) was to render certificates of eviction unavailable to condominium developers. At the same time, the amendment to § 9(a)(8) preserves, for the condominium purchaser who seeks to occupy the unit, the opportunity to evict a tenant who refuses to vacate voluntarily. However, if the tenant was in possession of the unit when the new landlord acquired ownership, that tenant is protected by a mandatory six-month stay of issuance of a certificate of eviction. The amendment to § 9(a)(8) also provides for an additional six-month delay if the board determines that a hardship exists.[9] After approval by the Attorney General, pursuant to G. L. c. 40, § 32, both amendments took effect on September 27, 1978.

The plaintiff Grace is a developer of a condominium project in Brookline. On January 13, 1978, he purchased several buildings in order to convert the thirty-five apartments therein for sale as condominiums. After entering into purchase and sale agreements with prospective purchasers who were not tenants and who intended to occupy the units, Grace applied to the board for certificates of eviction. In each case decided before July 25, 1978, on finding compliance with the guidelines, the board granted Grace a certificate of eviction.

Prior to enactment of the by-law amendments, the plaintiff Lonabocker contracted to buy one of the units owned by Grace. She obtained a commitment for mortgage financing and sold her residence, expecting to occupy the condominium. After July 25, 1978, Lonabocker and Grace were disqualified from applying for a certificate of eviction. Because she was unable to obtain occupancy of the unit, Lonabocker's mortgage financing was cancelled. She has not purchased the unit.

---

*General Laws of Massachusetts shall not be deemed just cause hereunder"* (emphasis indicates language added pursuant to amendment).

[9] On December 5, 1978, the board adopted a regulation which governs procedures for determining "hardship" under § 9(a)(8), as amended.

The plaintiff Ehrenworth purchased a unit from Grace on October 20, 1978, in order to occupy it as his residence. At the time of the purchase, the unit was occupied by a tenant. Ehrenworth filed an application for a certificate of eviction which was approved by the board on December 19, 1978. As of March 2, 1979, the date of the parties' stipulation, the board had not issued a certificate of eviction, by virtue of the operation of § 9(a)(8), as amended. Since purchasing the unit from Grace, and until at least March 2, 1979, Ehrenworth received rent from the tenant occupying the unit.[10] The rental receipts, however, were insufficient to offset the monthly carrying charges incurred by Ehrenworth on the unit. Grace agreed to bear the difference between the rents collected and the costs incurred for a period of one year from the passage of title.[11]

On November 14, 1978, a Brookline special town meeting voted to amend the by-law further by imposing a general six-month moratorium on the issuance of any certificate of eviction against a tenant who was in possession of an apartment when it was purchased as a condominium unit. The

[10] On October 25, 1978, Ehrenworth and Grace petitioned the board for an increase in authorized rent for units owned by them. Each received increases to the amount sought on January 30, 1979.

[11] According to a letter from Ehrenworth's counsel confirming certain statements which he made during oral argument of this matter, the tenant occupying the condominium unit owned by Ehrenworth vacated the premises sometime prior to May 8, 1979. As a consequence, Ehrenworth's occupancy of the unit no longer depends upon the issuance of a certificate of eviction. This turn of events raises the spectre of mootness as to Ehrenworth's appeal. See *Zussman* v. *Rent Control Bd. of Brookline*, 367 Mass. 561, 565 (1975). It also presents a related question as to the appropriateness of our passing on the validity of § 9(a)(8), since the remaining plaintiffs in the action are aggrieved more specifically by the operation of § 9(a)(10). The mootness issue has been neither argued nor briefed, however, and we deem it unnecessary to explore it more fully here. Suffice it to say that we view the question of the lawfulness of § 9(a)(8) as one of public importance which is capable of repetition, yet evading review. It has been fully argued to us in an adversary proceeding, and we think it appropriate that we express our opinion. See *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 274 (1978); *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973).

moratorium, which was approved by the Attorney General on December 28, 1978, bore an expiration date of June 15, 1979.[12]

The plaintiffs contend that the by-law amendments (1) are inconsistent with St. 1970, c. 843; G. L. c. 183A; and G. L. c. 239, and (2) deny them due process of law and equal protection of the laws. We address the statutory arguments first, followed by consideration of the constitutional issues raised.

A. *Statutory Issues.*

1. Referring to St. 1970, c. 843, in *Marshal House, Inc. v. Rent Control Bd. of Brookline,* 358 Mass. 686, 698 (1971), we recognized that once the Legislature has adopted a policy of rent control by emergency legislation, it "may also delegate to the cities and towns as governmental agencies the administration of its details in respect to matters peculiarly affecting local interests." Chapter 843 explicitly grants to Brookline the option to regulate the eviction of tenants by by-law. St. 1970, c. 843, § 6. Until December, 1975, when Brookline adopted art. XXXVIII, § 9, of its by-laws, that enabling provision lay dormant. The plaintiffs now challenge the amendments to § 9 of the by-law as exceeding the scope of delegation intended by c. 843.

The plaintiffs bear an onerous burden in seeking to invalidate the by-law amendments. We have consistently stated

---

[12] The imposition of this moratorium postdated the plaintiffs' complaint, and is not a matter for consideration in this action. We note also the submission by all counsel on May 15, 1979, of votes taken at the third session of the annual town meeting of Brookline held May 7, 1979. At that meeting the town voted to amend further § 9(a)(8) of the by-law so as to preclude recovery of possession of a condominium unit "from a tenant who has occupied the unit continuously since a time prior to the recording of any master deed for the condominium." Purchased units for which the deed was recorded on or before January 3, 1979, are to be exempt from the amendment's provisions. The town also voted certain other amendments. There is no indication of record that any of these amendments has become effective under the provisions of G. L. c. 40, § 32, nor have the issues that may arise therefrom been argued. Since questions as to the validity of these amendments are not properly before us, we express no view in their regard.

that in the judicial review of municipal by-laws and ordinances "every presumption is to be made in favor of their validity, and that their enforcement will not be refused unless it is shown beyond reasonable doubt that they conflict with the applicable enabling act or the Constitution." *Crall* v. *Leominster*, 362 Mass. 95, 102 (1972), and cases cited. In seeking to meet their burden, the plaintiffs rely heavily on our decision in *Zussman* v. *Rent Control Bd. of Brookline*, 367 Mass. 561 (1975), where we struck down eviction restrictions similar to those presented here. *Zussman*, however, is distinguishable in at least one critical respect. The court in *Zussman* ruled invalid emergency regulations[13] promulgated by the Brookline rent control board under authority that the board presumed had been granted by St. 1970, c. 842, a statute of Statewide application. According to the court, by enacting regulations which tend to discourage condominium conversion, the Board had accorded insufficient recognition to the policy, implicit in c. 842, of encouraging home ownership. The regulations foundered on that single premise.

The by-law amendments under consideration here face no such obstacle. Unlike the regulations in *Zussman*, the by-law amendments were enacted under authority granted in c. 843 especially to Brookline for the purpose of enabling that town to confront, singularly, its housing difficulties. The two chapters differ in crucial respects. As we noted in *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, *supra* at 697: "Chapter 843 states that 'a serious public emergency exists in the town of Brookline with respect to the housing of a substantial number of the citizens of said town.' It goes on to describe the emergency as created in

---

[13] Like the by-law amendments before us, one of two sets of regulations considered in *Zussman* precluded eviction of tenants by a condominium developer. Both sets did allow, however, for issuance of certificates of eviction to condominium purchasers who sought occupancy of the unit for themselves or their families. Unlike the pertinent by-law amendment before us (§ 9[a][8]), they did not require a six- to twelve-month delay in the eviction process.

part by an 'expanding student population . . . [and] a substantial elderly population,' causes not assigned in the comparable statement of emergency in c. 842. Chapter 843 under § 2 grants the town broad general regulatory powers, unencumbered by the various restrictions and exemptions contained in § 3 of c. 842, to deal with its particular housing crisis. It is apparent from a comparison of §§ 1 and 2 of c. 843 and comparable sections of c. 842 that the problem in Brookline was unique. . . ." Furthermore, none of the provisions cited in *Zussman* as indicating the c. 842 policy of encouragement of home ownership is present in c. 843. See *Zussman, supra* at 566-567. Absent provisions to the same effect, we decline to read such a policy into c. 843.[14]

The plaintiffs also claim that the by-law amendments are unauthorized by c. 843 because they obstruct the intent made explicit in § 2, that "evictions may be regulated by the rent board so as to remove hardships or correct inequities for both *the owner* and tenants of such housing accommodations" (emphasis supplied). We agree that the interests of condominium developers and purchasers are to be given due consideration under c. 843. It is clear, however, that the major thrust of the act was directed at the need to control "abnormally high rents" and the "substantial and increasing shortage of rental housing accommodations" which most severely afflict "families of low and moderate income and elderly on fixed income." See c. 843, § 1. By retarding the pace of condominium conversion, the by-law amendments further this purpose. In doing so, moreover, they fairly accommodate the interests of building owners and condominium developers and purchasers. They do not deprive landlords of their reasonable profits. Nor do they preclude condominium conversion altogether. Conversion is permissible and may proceed unimpeded when the tenant

---

[14] As we stated in *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686, 699 (1971), "[chapters 842 and 843] taken together evidence a realization by the Legislature of the gravity of the housing situation in Brookline in particular and an intention to give the town the freedom to deal with its particular problems as it deemed best."

chooses to buy the unit or vacates voluntarily. This accommodation to the interests of condominium developers and purchasers of condominium units is particularly significant since such conversions, while avoiding the hardships incidental to eviction of tenants, have a nonetheless deleterious effect on the rental housing market.[15]

We hold, therefore, that the by-law amendments are both consistent with and authorized by St. 1970, c. 843.

2. General Laws c. 183A. The plaintiffs also assert that the tendency of the by-law amendments to decelerate condominium conversion conflicts with the purpose of G. L. c. 183A, entitled "Condominiums." We disagree. Chapter 183A is a neutral provision, neither favoring nor disfavoring condominium conversion. The apparent purpose of the statute was to clarify the legal status of the condominium in light of its peculiar characteristics, and not to grant this hybrid form of property ownership exceptional protection from social legislation. The language in § 4 of c. 183A, cited by the plaintiffs, that each unit owner of a condominium "shall be entitled to the exclusive ownership and pos-

---

[15] In his brief, focusing on the purchaser of a condominium unit, the defendant-intervener Attorney General states that the by-law amendments "simply delay possession for six to twelve months to allow the displaced tenant an opportunity to find new housing." We have observed that the board's refusal to issue a certificate of eviction until the condominium purchaser has assumed title (when a tenant chooses not to move voluntarily) may have the effect of preventing the conversion of the particular controlled rental unit into a condominium. "Purchasers of condominiums would be ill-advised to make full payment for a unit without any assurance that possession could be recovered, and financing for the transaction could not be expected to be available." *Zussman v. Rent Control Bd. of Brookline*, 367 Mass. 561, 569 (1975). Assuming the continued validity of that statement given current conditions, the additional six- to twelve-month delay provided by the by-law amendment would further tend to hamper conversion of units which tenants refuse to relinquish. We reiterate, however, that only these units are affected by the amendments. The unencumbered permissibility of conversion of units which have been vacated voluntarily or purchased by the tenant adequately protects the interests of owners referred to in c. 843. See Note, Tenant Protection in Condominium Conversions: The New York Experience, 48 St. John's L. Rev. 978 (1974).

session of his unit" does not contradict this view. In the context of the entire section and the act as a whole, the evident intent of these words is to define the rights and responsibilities of condominium owners in a particular building vis-à-vis one another, and not to insulate them, uniquely, from the reach of rent and eviction control.[16]

3. Finally, the plaintiffs claim that the "comprehensive statutory treatment" of stays of eviction embodied in G. L. c. 239, §§ 9-11, preempts the imposition of a six- to twelve-month waiting period on the purchaser's occupancy of an individual condominium unit. While §§ 9-11 of c. 239 empower a court to grant discretionary stays of execution in summary process proceedings, and articulate criteria to be considered with regard thereto, these provisions do not preclude the application of the by-law amendments. "In determining whether a local regulation is inconsistent with State legislation, it was said in *Commonwealth* v. *Baronas*, 285 Mass. 321, 323 (1934), that '[t]he mere existence of statutory provision for some matters within the purview of the by-law will not render it invalid as repugnant to law'" (citations omitted). *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 212 (1975). Further, in our comprehensive treatment of the subject in *Bloom* v. *Worcester*, 363 Mass. 136, 154 (1973), we stated: "As a general proposition the cases dealing with the repugnancy or incon-

---

[16] General Laws c. 183A was originally enacted in 1963. St. 1963, c. 493, § 1. At that time the rate of condominium conversion, with its attendant impact on the rental market, had not reached the rather frenzied levels apparent today. See, e.g., Miller, Condomania: A Buyer's Guide, Boston Phoenix, April 3, 1979, § 2, at 5; City of Cambridge, Community Development Department, Condominium Conversions in Cambridge: A Profile of New Owners and Former Tenants (December, 1978); Advisory Committee Recommendation on by-law amendments to be voted at Brookline Special Town Meeting on July 25, 1978. In recent years the Legislature appears to have taken cognizance of the special problems that may be created for certain cities or towns and has enacted special legislation providing some degree of control to local authorities so as to meet this need. Statute 1970, c. 843 is, as we have pointed out, such a statute. Other examples are found as to Newton, St. 1974, c. 847; and, as to Cambridge, St. 1976, c. 36.

sistency of local regulations with State statutes have given considerable latitude to municipalities, requiring a sharp conflict between the local and State provisions before the local regulation has been held invalid."

That sharp conflict appears when either the legislative intent to preclude local action is clear, or, absent plain expression of such intent, the purpose of the statute cannot be achieved in the face of the local by-law. Neither circumstance is presented here. Chapter 239 is silent on whether local action with respect to eviction regulation is precluded. The later-enacted St. 1970, c. 843, broadly empowers Brookline to regulate, by by-law, the eviction of tenants. The two statutes, juxtaposed, indicate that the Legislature did not intend c. 239 to occupy the field of tenant evictions. Compare *Taunton Greyhound Ass'n* v. *Dighton*, 373 Mass. 60 (1977), with *Del Duca* v. *Town Adm'r of Methuen*, 368 Mass. 1 (1975).

Nor do the by-law amendments frustrate the legislative purpose implicit in G. L. c. 239. We have viewed c. 239 as an attempt "to mitigate hardships to tenants, and at the same time to protect adequately the rights of the owner." *Opinion of the Justices*, 321 Mass. 772, 774 (1947). The automatic six-month delay in issuance of certificates of eviction (plus the discretionary hardship delay of up to an additional six months) established in the by-law amendments does not undercut this design. The operation of the amendments merely postpones the application of c. 239, without compromising its objectives.[17] See *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425 (1975). Serving to ameliorate the trauma of dislocation for tenants, the by-laws also preserve for owners the right to collect a reasonable rent for the duration of the tenancy. In our view, the amendments supplement c. 239; they do not supplant it. Compare *Anderson* v. *Boston*, 376 Mass. 178,

---

[17] Indeed, by allowing tenants facing dislocation time to explore alternative housing possibilities, the by-law amendments may have the salutary effect of reducing the glut of summary process cases before the courts.

186-187 (1978), appeal dismissed, 439 U.S. 1060 (1979), with *Boston Police Patrolmen's Ass'n* v. *Boston*, 367 Mass. 368, 372-373 (1975).

B. *Constitutional Claims.*

The plaintiffs raise two constitutional arguments in contesting the validity of the amendments. They claim that on their face the amendments effect a taking without just compensation and deprive them of the equal protection of the laws. As with the statutory arguments, plaintiffs must satisfy a heavy burden if they are to prevail on these claims. See *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 233 (1972), cert. denied, 409 U.S. 1108 (1973). We conclude that they have not met their burden.

1. The plaintiffs' "taking" argument rests on an apparent distinction between the regulation of use and the transfer of rights.[18] They suggest that the amendments are illegal because, rather than regulate what uses are or are not permitted, the amendments determine who, as between a tenant in possession and an owner, shall enjoy a permitted use. In effect, the plaintiffs contend, the amendments transfer the right to possess from the owner to the tenant and compel the condominium owner to become a landlord.

The United States Supreme Court consistently has upheld rent control statutes as proper exercises of the police power in times of public emergency. See *Bowles* v. *Willingham*, 321 U.S. 503, 517 (1944); *Edgar A. Levy Leasing Co.* v. *Siegel*, 258 U.S. 242 (1922); *Marcus Brown Holding Co.* v. *Feldman*, 256 U.S. 170 (1921); *Block* v. *Hirsh*, 256 U.S. 135 (1921). This court also has upheld such acts, including the enabling legislation for the local provisions challenged today. *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686 (1971). See *Huard* v. *Forest St. Hous., Inc.*, 366 Mass. 203, 207 (1974). See also *Russell* v. *Treasurer*

---

[18] The objection here is to the effect of the mandatory delay provision on the rights of a condominium purchaser. Only one of three plaintiffs is in that position. See note 11, *supra*. We nonetheless continue to refer to plaintiffs in the plural because their brief does not differentiate their interests.

& Receiver Gen., 331 Mass. 501 (1954). Cf. Mayo v. Boston Rent Control Adm'r, 365 Mass. 575 (1974). The import of these cases is that a shortage of housing threatens the public interest (Block v. Hirsh, supra at 156), and that legislation which preserves the rental market for low, moderate, and fixed income persons promotes health, safety, and welfare generally. In short, a housing crisis justifies the exercise of the police power.

A particular provision, nevertheless, may go too far. "For just as there comes a point at which the police power ceases and leaves only that of eminent domain, it may be conceded that regulations of the present sort pressed to a certain height might amount to a taking without due process of law." Id. See generally Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922). The character of governmental action is one of several factors relevant to a determination of whether a taking has occurred. See Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978). In a strict sense, the amendments do effect a transfer of rights incident to ownership: the tenant in possession at the time of conversion is permitted to remain in possession even though the owner seeks recovery for his own personal use. In our view, however, this redistribution of rights is not unlike the redistribution of rights effected by rent and eviction control generally.

During a housing shortage, the Legislature has wide latitude to control rents and evictions. See, e.g., Mayo v. Boston Rent Control Adm'r, supra (landlord may not evict in order to perform renovation that would increase rents). How wide that latitude is, we need not determine now since the amendments go no further than the provisions upheld in the cases cited. The by-law amendments in issue do not attempt to create rental housing from owner-occupied units, nor do they bring under control units not previously subject to the by-law. They merely limit the property owners' right to remove units from the rental market, by delaying recovery for personal occupancy. But cf. Rivera v. R. Cobian Chinea & Co., 181 F.2d 974, 978 (1st Cir. 1950). The

period of delay required by these amendments does not render the provisions confiscatory.

In reaching this conclusion we are especially mindful that the property held by the plaintiffs is not rendered worthless by the amendments. Compare *Pennsylvania Coal Co. v. Mahon, supra,* with *Goldblatt v. Hempstead,* 369 U.S. 590, 594 (1962), and *Turnpike Realty Co. v. Dedham, supra* at 236-237. Inasmuch as the amendments permit the condominium purchaser to take possession eventually, a unit purchased for conversion has value as a condominium even while it remains tenant-occupied. Cf. *Golden v. Planning Bd. of Ramapo,* 30 N.Y.2d 359, 380-381, appeal dismissed, 409 U.S. 1003 (1972). Moreover, until the tenant vacates, the condominium purchaser is entitled to receive rent. By statute, rent for a controlled unit must yield a "fair net operating income." St. 1971, c. 673, § 1. In order to obtain this yield, the owner may seek such individual adjustment as may be necessary. *Id.* Significantly, both plaintiffs Grace and Ehrenworth obtained adjustments for the units they owned to the levels of rent sought.

2. In their equal protection argument, the plaintiffs appear to challenge the amendments as both under-inclusive and over-inclusive: under-inclusive because they do not apply to all purchasers or owners of residential rental property; over-inclusive because they apply to fair-minded condominium purchasers as well as to those who would harass and pressure tenants to vacate.

Underlying both equal protection contentions is the assumption that Brookline has drawn a distinction based solely on the form of ownership. The plaintiffs assert that in a number of cases from other jurisdictions, purportedly cited with approval in *Goldman v. Dennis,* 375 Mass. 197, 200 (1978), courts have held that "[p]lanning controls . . . cannot be employed by a municipality to exclude condominiums or discriminate against the condominium form of ownership, for it is use rather than form of ownership that is the proper concern and focus of zoning and planning regulation." *Maplewood Village Tenants Ass'n v. Maple-*

*wood Village,* 116 N.J. Super. 372, 377 (1971). See *Miami Beach* v. *Arlen King Cole Condominium Ass'n,* 302 So. 2d 777 (Fla. Dist. Ct. App. 1974).

Contrary to the plaintiffs' interpretation of *Goldman,* that case neither approves nor disapproves of the reasoning of cases like *Maplewood Village Tenants Ass'n.* Those cases were cited simply as inapposite to the matter then before us. Likewise, they do not control the issue before us. None involved condominium conversion in the context of rent and eviction control. Nor did those cases rest their decisions on the constitutional guaranty of equal protection of the laws. Instead, each held that under the applicable zoning enabling acts, regulation based on the form of ownership was unauthorized. We perceive no reason why Brookline may not draw up regulations based on the form of ownership so long as such a classification is rationally related to the purposes of rent and eviction control.[19]

We have no difficulty in concluding that the challenged classification rationally furthers the purposes of rent and eviction control. The record suggests that conversion of controlled units into condominiums has been occurring with accelerating frequency. Consequently, Brookline reasonably could have concluded that condominium conversion posed a singular threat to the purpose of rent control. There is no denial of equal protection because Brookline chose to focus its response on that threat. See *Williamson* v. *Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489 (1955); *Newell* v. *Rent Bd. of Peabody,* 378 Mass. 443, 449-450 (1979); *Mobil Oil Corp.* v. *Attorney Gen.,* 361 Mass. 401, 417 (1972). The town also might have concluded reasonably that, due to the potential for harassment of tenants by condominium purchasers anxious to obtain possession, "a particular limitation . . . would protect against its occur-

---

[19] The plaintiffs concede that this is the appropriate standard of review. See *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 694-695 (1971). Cf. *Zayre Corp.* v. *Attorney Gen.,* 372 Mass. 423, 432-433 (1977).

rence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of [the] prophylactic rule." *Weinberger* v. *Salfi*, 422 U.S. 749, 777 (1975). Consequently, there is no denial of equal protection because the amendments apply whether or not the purchaser is guilty of harassment.

### *Conclusion.*

For the reasons stated, we conclude that the amendments to art. XXXVIII of the Brookline by-laws, adopted on July 25, 1978, are valid. The promulgation of these by-law amendments by the town meeting was within the authority granted to the town of Brookline by St. 1970, c. 843. The by-law amendments are not in conflict with G. L. c. 183A or G. L. c. 239, nor do they violate the rights of the plaintiffs under Federal or State constitutional provisions. This case is remanded to the single justice for the entry of a judgment declaring the rights of the parties in accordance with this opinion.

*So ordered.*