GAETANO F. MORELLO, trustee, vs. BOSTON RENT
CONTROL BOARD.

Suffolk.   March 8, 1982. — June 14, 1982.

Present: HALE, C.J., GRANT, & PERRETTA, JJ.

*Real Property*, Condominium.  *Landlord and Tenant*, Eviction.  *Administrative Law*, Regulation.  *Boston*.

The Boston rent control board lacked authority under c. 37 of the Boston
ordinances of 1979 to promulgate a condominium conversion regula-
tion requiring a landlord who wishes to convert his property to condo-
minium ownership to file with the board copies of all eviction notices
given to his tenants, and providing that eviction notices shall be
without effect unless copies thereof are filed within a prescribed time
period. [28-35]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 17, 1981.

On transfer to the Boston Division of the Housing Court
Department the case was heard by *Daher*, C.J., on a mo-
tion for summary judgment.

*Mark L. Snyder* for the defendant.
*David Berman* for the plaintiff.

PERRETTA, J.  On April 29, 1980, the defendant board
promulgated a condominium conversion eviction regulation
which, by § 7(A)(2)(b), requires a landlord who had served
tenants with conversion eviction notices prior to the pro-
mulgation of the regulation to file copies of those notices
with the board within forty-five days after the effective date
of the regulation, April 29, 1980.[1]  Section 7(A)(2)(c) pro-
vides that a failure to file the copies "shall render such

---

[1] A landlord giving conversion eviction notices after April 29, 1980,
must file the necessary copies with the board within thirty days of service
of the notice on the tenant.  See § 7(A)(2)(a).

notices ineffective." (The pertinent provisions of § 7 of the regulation have been set out in an appendix to this opinion.) The landlord had served his tenants with conversion eviction notices on or about January 30, 1980, but he did not file copies with the board in a timely manner. In September of 1980, the landlord sought the board's permission to file the copies, but the board advised him that it had no discretion in the matter and that the notices were ineffective. The landlord then brought an action in the Superior Court under G. L. c. 231A, seeking a determination that § 7(A)(2)(c) could not be applied to the property in question. The action was transferred to the Boston Housing Court (see G. L. c. 185C, § 20), where the parties filed cross motions for summary judgment. There being no facts in dispute, the judge concluded, and entered a judgment declaring, that § 7(A)(2) was "not validly applicable" to the landlord's property at issue. We modify the judgment to declare that § 7(A)(2)(c) of the condominium conversion eviction regulation of the Boston Rent Control Board is invalid, and we affirm the judgment as modified.

1. *The Enabling Ordinance.*

On December 27, 1979, the city council of Boston enacted c. 37 of the Ordinances of 1979 (the Ordinance), entitled "Regulating Evictions for Condominium Conversions." Prior to the Ordinance, condominium conversion evictions had been regulated by c. 15 of the Ordinances of the City of Boston (1975), Boston's rent control law. While c. 15 regulates certain residential rents and evictions, it makes no procedural distinction between evictions in general and condominium conversion evictions in particular. See c. 15, § 8(a) (ix) and (x), § 8(b), and § 8(e). Cf. *Zussman* v. *Rent Control Bd. of Brookline*, 367 Mass. 561, 562 (1975). However, as noted in the preamble to the Ordinance, § 200, condominium conversion evictions result in suffering for those many tenants who are faced with imminent displacement and must quickly relocate but who have limited choices because of their finances and age. The stated purpose of the Ordinance is to avoid discouraging condominium conver-

sions while at the same time protecting tenants from hardship by affording them more time than that provided under c. 15, § 8, to make new living arrangements.[2]

The intent of the Ordinance is given effect by § 204, which precludes a landlord from recovering possession of a housing accommodation for condominium conversion purposes until the expiration of the tenant's housing agreement or until one year after the date the tenant receives written notice of the termination of the tenancy, whichever is later. A two-year notice period is required for tenants who have attained the age of sixty-two years on or before the date of receipt of the notice or who are physically handicapped and economically limited, as specified in § 204. Additionally, the landlord must record a master deed under G. L. c. 183A prior to or within the notice period.

The notice requirements established under § 204 are specific. The landlord must serve the tenant personally or by certified mail, and he "shall advise the tenant of the rights and procedures available under this ordinance, including if applicable, a statement of such tenant rights and procedures available under the rules of the board."

---

[2] Section 200 of the Ordinance states, in significant part:

"Whereas, Homeownership creates an interest in real estate which tends to contribute to the maintenance and preservation of housing and to an increase in real estate taxes which has a salutary effect on the city and its people, and the City Council should, therefore, encourage an increase in such ownership or at least should avoid discouraging it . . . .

"Whereas, Notwithstanding the general good accomplished by such increase in homeownership, many people of limited means, particularly the elderly, are suffering thereby in that they have difficulty in obtaining alternative rental housing at prices which they can afford when evicted for condominium conversion . . .

"Whereas, The untoward effects of condominium conversion evictions on tenants can be adequately dealt with by providing potentially displaced tenants with sufficient time to examine the housing market, evaluate available housing alternatives, formulate future housing plans, secure any necessary financing, and decide whether to purchase the condominium unit or relocate . . .

"Whereas, This emergency cannot be dealt with solely by the operation of the private rental housing market nor solely by chapter 15 of the Ordinances of 1975, as amended . . . ."

Upon the expiration of the notice period, the landlord must furnish the board with proof of compliance with all the provisions regulating condominium conversion evictions. If the board finds that the landlord's proof is valid and that he has complied with the provisions of the Ordinance, "a certificate of eviction shall be issued."

2. *The Landlord's Notices.*

A master deed had been recorded for the premises on or about November 5, 1979, converting the housing accommodation, which was and continues to be subject to c. 15, into a condominium under G. L. c. 183A. Subsequent to the effective date of the Ordinance but prior to the promulgation of the regulation, the landlord sent the notices to his tenants.[3] When the landlord became aware of the regula-

---

[3] Differing as to the tenants' names and unit numbers, the notices were in the following form:

"[tenant's name]
250 Commonwealth Avenue
Apartment [number]
Boston, Massachusetts 02116

January 30, 1980

Re: Condominium Conversion Notice:
    THE CONDOMINIUM AT 250 COMMONWEALTH AVENUE - UNIT NO.[  ]

    YOU ARE NOT BEING EVICTED OR BEING ASKED TO VACATE THE PREMISES.

Dear [tenant's name]:

Please be advised that pursuant to Section 204 of Chapter 4 (CONDOMINIUM CONVERSION REGULATION) of the City of Boston Code Ordinance 10, you are hereby advised that your tenancy at the above address is hereby terminated on the later to occur of (a) the expiration of your lease, or (b) one year from your receipt of this notice of termination of your tenancy (except as provided in Section 204, including but not limited to certain elderly and handicapped persons.)

You are advised that you have certain rights under the above Ordinance and under the rules of the Boston Rent Control Board governing the recovery of a housing accommodation in order to convert it to a condominium as adopted on 29 June 1979, as amended 27 July 1979, pursuant

tion in August, 1980, which was beyond the time period established in § 7(A)(2)(b), he wrote to the board seeking permission to file copies of the notices, which he enclosed. He stated that these notices were in compliance with the Ordinance and the regulation and that his only misstep in the procedures had been his failure to comply with § 7(A) (2)(b) by filing copies with the board. The board advised the landlord in writing, with copies of its response to the landlord's tenants, that § 7(A)(2)(c) "is mandatory, leaving the Board without any discretion in the matter," and that the notices were "ineffective and should not be relied upon for purposes of condominium conversion eviction." As of the date of argument before us, only one tenant has remained on the premises.

3. *The Validity of the Regulation.*

In considering the validity of § 7(A)(2)(c), we look first to the scope of authority conferred upon the board by the Ordinance, keeping in mind that the board is limited to "only those powers which are expressly conferred by statute or

---

to the provisions of Chapter 15 of the Ordinances of 1975, as amended. Copies of the Ordinance and the Condominium Policy (as amended 7/27/79) of the Boston Rent Control Board are attached herewith and are being furnished for the express purpose of making you aware of the rights and procedures available to you under the Ordinance and Condominium Policy of the Boston Rent Control Board.

                                        Sincerely,

                                        [signature]

                                        Gaetano F. Morello
                                        Trustee of the Comm. Ave. Trust
                                        17 Prescott Street
                                        Medford, MA 02155

Enclosures:
    City of Boston Ordinance related to
    eviction for condominium conversions
    Copy of Condominium Policy — Boston
    Eviction Regulations

CERTIFIED
RETURN RECEIPT REQUESTED"

necessarily implied from those expressly conferred," *Church v. Boston*, 370 Mass. 598, 601 (1976), but that a "regulation may be authorized even where it cannot be traced to specific statutory language." *Grocery Manufacturers of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 75 (1979). Moreover, where an agency is given the responsibility "to effectuate the purposes of an act 'the validity of a regulation promulgated thereunder will be sustained so long as it is "reasonably related to the purposes of the enabling legislation."'" *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 524 (1979).

The regulation in issue was promulgated under § 210 of the Ordinance, which states in pertinent part: "Nothing in this ordinance shall be construed as giving the board any additional powers other than those specifically set forth herein and those exercised by the board in accordance with section 205 and section 2(c) of Chapter 15 of the Ordinances of 1975, as amended, as they relate to the eviction of tenants for the purposes of condominium conversion." Section 205 gives the board "the power and duty to enforce" the Ordinance, and c. 15, § 2(c), confers upon the board the power "to promulgate such . . . regulations . . . as will further the provisions of this ordinance."[4]

We do not view the scope of the board's authority as having the breadth of that found in such cases as: *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 847 (1977) (G. L. c. 111, § 128H, as amended by St. 1971, c. 373, authorized the department to establish "by promulgation of regulations, such minimum standards relating to the rights of visitation . . . as will ensure the adequate pro-

---

[4] The board argues that all the powers conferred upon it by c. 15, § 2(a)-2(d), have been "specifically set forth" in the Ordinance within the meaning of § 210 by reason of § 201, which provides, in relevant part, that "[w]hen used in this ordinance, unless the context otherwise requires," the term "board" means "the rent board as established under section 2(a-d) of Chapter 15." We reject the board's contention because its contrived construction of § 201 and § 210 would change the express and unambiguous language of the latter section into either meaningless surplusage or a contradiction.

tection of said rights"); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. at 524-525 (pursuant to G. L. c. 112, § 5, as amended by St. 1975, c. 362, § 3, the board was empowered to "adopt rules and regulations governing the practice of medicine in order to promote the public health, welfare, and safety and nothing in this section shall be construed to limit this general power"); *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 766 (1980) ("'The attorney general may make rules and regulations interpreting the provisions of subsection 2[a] of this chapter,'" G. L. c. 93A, which have the force and effect of law). See also *Grocery Manufacturers of America* v. *Department of Pub. Health*, 379 Mass. at 75-77, for a comparison of authorities therein collected.

The board's authority to promulgate regulations is to be exercised in a manner consistent with the city council's policy, expressed in § 200 of the Ordinance, to "encourage an increase in [home] ownership or at least [to] avoid discouraging it." See *Zussman* v. *Rent Control Bd. of Brookline*, 367 Mass. at 568-569. Compare *Grace* v. *Brookline*, 379 Mass. 43, 51-52 (1979); *Flynn* v. *Cambridge*, 383 Mass. 152, 154 n.3 (1981).[5]

Further, we are particularly mindful of that passage in § 200 of the Ordinance which states that "[t]he untoward effects of condominium conversion evictions on tenants can be *adequately* dealt with by providing potentially displaced tenants with sufficient time to examine" their available alternatives (emphasis supplied).

---

[5] This policy was absent in *Grace* v. *Brookline*, 379 Mass. at 51-52, where the town had rescinded its prior acceptance of St. 1970, c. 842, which, as noted in *Zussman* v. *Rent Control Bd. of Brookline*, 367 Mass. at 566-567, accommodated itself "to a policy of encouraging home ownership in condominium form." Acting under the authority of St. 1970, c. 843, the town instead adopted by-laws which effectively rendered certificates of eviction unavailable to condominium developers and which gave certain tenants more time to surrender their leaseholds to landlords seeking to recover possession. In *Flynn* v. *Cambridge*, 383 Mass. at 154 n.3, the court noted that "this policy is also missing from, or at most secondary in, the legislation challenged in this case."

While the board's intention in promulgating § 7(A)(2)(c) may be laudable, the invalidation of otherwise effective notices does nothing to "further the provisions" of the Ordinance, as required by c. 15, § 2(c). Rather, it extends to a tenant who may have been fully apprised of his rights and remedies by the landlord's notices twice the amount of time declared adequate by the city council to secure alternative housing accommodations. There is nothing in the regulation which requires the board to pass upon the sufficiency of the landlord's notices upon receiving copies of them pursuant to § 7(A)(2)(a) or (b), or prior to an application for a certificate of eviction. Nor does § 7(A)(2)(c) make any accommodation for the landlord who has fully complied with the Ordinance and the regulation except for the filing of the copies mandated by § 7(A)(2)(a) or (b). Compare § 7E; § 11(D) (failure of a landlord to make timely filing of affidavit of compliance in respect to vacancy decontrolled housing "shall result in dismissal of the action *unless* the landlord proves that such failure did not result in substantial prejudice to those defending such action") (emphasis supplied). Section 204 of the Ordinance, however, states that if a landlord has complied with all the requirements of the Ordinance, then "a certificate of eviction shall be issued" at the expiration of the notice period. While the board may promulgate regulations concerning matters provided for in the Ordinance (see *Commonwealth* v. *Baronas*, 285 Mass. 321, 323 [1934]; *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 212 [1975]), it may not do so in a manner which unnecessarily impedes the landlord and thereby frustrates, rather than furthers, the provisions of the Ordinance.

These considerations lead us to the conclusion that condominium conversion eviction notices which are in compliance with the provisions of the Ordinance and valid regulations promulgated thereunder cannot be invalidated solely for a failure to make a timely filing of copies of the notices with the board. The regulation gives the tenant a bonus at the landlord's expense, and that is not "a proper accommoda-

tion of the policies of the . . . [ordinance] with the policy of encouraging home ownership." *Zussman* v. *Rent Control Bd. of Brookline,* 367 Mass. at 569. Compare *Grace* v. *Brookline,* 379 Mass. at 50-52; *Flynn* v. *Cambridge,* 383 Mass. at 156-159.

In light of our conclusion that § 7(A)(2)(c) is invalid as beyond the board's authority, we need not consider the landlord's contentions concerning the "retroactive" aspects of § 7(A)(2)(c) when applied with § 7(A)(2)(b). Nor do we view it as necessary to determine the validity of § 7(A)(2)(a) and (b) apart from § 7(A)(2)(c). The latter regulation is severable from those provisions, and our holding is so confined. Additionally, nothing we have said should be taken as a suggestion or an intimation that the landlord's notices are such that he will be entitled to a certificate of eviction upon the expiration of the applicable notice period established under § 204 of the Ordinance. We hold only that the landlord's notices cannot be rendered ineffective because of noncompliance with § 7(A)(2)(c).

The judgment is modified to declare that § 7(A)(2)(c) of the condominium conversion eviction regulation of the Boston Rent Control Board is invalid, and as so modified, is affirmed.

*So ordered.*

APPENDIX

"7. GENERAL REQUIREMENTS FOR CONDOMINIUM CONVERSION EVICTIONS FROM ALL HOUSING ACCOMMODATIONS.

A landlord seeking to evict a tenant of a rent controlled or vacancy decontrolled housing accommodation for condominium conversion shall comply with the following requirements:

A. *Notice Terminating Tenancy for Condominium Conversion:*

2)
a) A notice terminating tenancy for condominium conversion shall be served by the landlord on the tenant who is

the subject of a condominium conversion eviction and a copy of such notice shall be filed with the Board within thirty (30) days of service on the tenant.

b) Where a landlord has given the notice terminating tenancy for condominium conversion before the effective date of this regulation such landlord shall file the notice with the Board within forty-five (45) days after the effective date of this regulation.

c) Failure to file the notice terminating tenancy for condominium conversion with the Board in accordance with the provisions of this Section or serve it on the tenant shall render such notice ineffective.

. . . .

E. *Compliance*:

Failure to substantially comply with the requirements of this Section shall result in the denial of a Certificate of Eviction for condominium conversion or dismissal in court of any action to recover possession of a housing accommodation for purposes of condominium conversion."