ALICE CHURCH & others[1] *vs.* CITY OF BOSTON & another.[2]

Suffolk. May 7, 1976. — July 7, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Rent Control. Municipal Corporations,* Rent control, "Home rule," By-laws and ordinances. *Constitutional Law,* Home Rule Amendment. *Practice, Civil,* Summary judgment.

Under St. 1969, c. 797, as amended by St. 1970, c. 863, § 2, authorizing the city of Boston to adopt a rent control ordinance applicable to housing accommodations with certain structures excluded, the city could adopt an ordinance with a vacancy decontrol provision even though such a provision was not specifically authorized by the statute. [599-602]

CIVIL ACTION commenced in the Housing Court of the City of Boston on January 12, 1976.

The case was heard by *Garrity,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Gerald J. Billow (James J. Cotter* with him) for the plaintiffs.

*Kevin F. Moloney,* Assistant Corporation Counsel (*William J. Smith,* Assistant Corporation Counsel, with him) for the city of Boston.

*John O. Mirick (Richard J. Innis* with him) for the Greater Boston Real Estate Board.

---

[1] The other plaintiffs who have appealed are David Scondras and Alice Sims.

[2] The Greater Boston Real Estate Board was permitted to intervene as a defendant. The Housing Court of the City of Boston determined that the board was "the representative of the class of all landlords in the City of Boston who are or may be affected by a determination of the validity of" vacancy decontrol.

WILKINS, J.   The plaintiffs challenge the authority of the city of Boston to adopt a rent control ordinance which contains a "vacancy decontrol" provision. The plaintiffs, who seek injunctive and declaratory relief, contend that the special acts under which the city adopted its current rent control ordinance do not permit the city to exclude vacated premises from the operation of the city's rent control ordinance. The plaintiffs appeal from a summary judgment of the Housing Court of the City of Boston in favor of the defendants. There was no error.

The present Boston rent control ordinance was adopted, effective December 31, 1975, to limit and regulate maximum rents in "housing accommodations," as defined in the ordinance. The ordinance excluded various premises from housing accommodations including "units of housing accommodations which become vacant on or after January 1, 1976 or which are vacated voluntarily or pursuant to court order anytime thereafter." [3]

The plaintiffs argue in this court, as they did below, that St. 1969, c. 797, and St. 1970, c. 863 (special acts concerning rent control in Boston), do not permit the city to exempt vacated premises from the operation of whatever rent control ordinance the city may have.[4] The plaintiffs point out correctly that these special acts were adopted pursuant to the Home Rule Amendment (art. 89 of the Amendments to the Constitution of the Commonwealth amending art. 2) and that legislation of this type was required to authorize adoption of the Boston rent control ordinance because the authority to adopt a rent control ordinance was not granted to municipalities by the Home

---

[3] The ordinance defines a vacancy and provides procedures to be followed in establishing the existence of a vacancy.

[4] In the lower court, the plaintiffs asserted that the "vacancy decontrol" provision denied them equal protection of the laws and infringed on their constitutionally protected right to travel. The judge rejected these arguments, and they are not presented before this court.

A vacancy decontrol provision in a statute was upheld in *Russell* v. *Treasurer & Receiver Gen.*, 331 Mass. 501, 508-509 (1954).

Rule Amendment.[5] *Marshal House, Inc.* v. *Rent Review & Grievance Bd. of Brookline,* 357 Mass. 709, 716-720 (1970). We turn then to a consideration of the legislation which the city contends authorizes it to adopt a rent control ordinance with a vacancy decontrol provision.

Statute 1969, c. 797, as amended by St. 1970, c. 863, § 2, provides that "[s]o long as the current public exigency, emergency or distress continues in the city of Boston, said city may by ordinance control the rent for the use or occupancy of housing accommodations in structures having three or more dwelling units, excluding motels, hotels or inns, and excluding housing accommodations in structures having three dwelling units one of which is *occupied by* the owner thereof as his permanent residence . . . ." The plaintiffs argue that when the Legislature expressly limited the city's power to control the rent of certain classes of premises, it implied an intention that local action must apply to all other premises. The city and the intervener argue that the language of the enabling legislation did not grant an all or nothing choice to the city and that a range of permissible local action is authorized.

We believe that the Legislature's statement of forbidden areas of action is not an indirect expression of an intention that Boston may add no other exemption or exclusion. The question is whether the city's area of permissible action is defined legislatively not only by exclusion but also by mandatory inclusion. We see no justification for a view that rent control must extend to all housing not excluded by a statute when that statute says only that a municipality may impose rent control, exclusive of certain areas. If the Legislature had intended to require that rent control in Boston be all inclusive, it could have done so by appropriate language.[6]

---

[5] Section 7 of the Home Rule Amendment excludes certain subjects from those on which a municipality may act by ordinance or by-law as a result of the adoption of the Home Rule Amendment. Clause (5) of § 7 denies municipalities the inherent power "to enact private or civil law governing civil relationships except as an incident to an exercise of an independent municipal power."

[6] We see no likely source of guidance as to the Legislature's inten-

We recognize that, where we are dealing with a subject as to which no local action may be taken without explicit legislative authorization, the scope of that permissible local action is not determined broadly under § 6 of the Home Rule Amendment. See *Bloom* v. *Worcester,* 363 Mass. 136, 155 (1973). The situation in this case is analogous to that existing prior to the Home Rule Amendment where a municipality had "only those powers which are expressly conferred by statute or necessarily implied from those expressly conferred or from undoubted municipal rights or privileges." *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, 255-256 (1958). But the plaintiffs are aided little by the requirement of clear authorization for local action because clearly local action is authorized here.

The plaintiffs argue that, in any event, the judge should not have granted summary judgment in favor of the defendants. They contend that there are genuine issues of material fact which were not resolved before the judge. Specifically, they claim that vacancy decontrol will conflict with the purpose of rent control and that an evidentiary hearing would demonstrate "the disastrous effects of vacancy decontrol." The plaintiffs' argument is not based on any constitutional principle, such as a claim that there is no rational basis for the legislative conclusion to adopt a rent control ordinance with "vacancy decontrol." Their argument seems directed rather to the claim that the Legislature could not have intended to authorize Boston to adopt a vacancy decontrol provision because such a provision will have "disastrous effects."

tion in the Boston rent control act from language in any other 1970 special act dealing with rent control in a specific locality. Comparison of language appearing in special acts adopted on petition under § 8 of the Home Rule Amendment is not likely to be instructive because the Legislature lacks the authority to make significant, limiting changes in a proposal received from a municipality.

If we were to look to other legislation, we might well be more persuaded by the fact that the 1970 Legislature authorized Brookline, which is largely surrounded by Boston, to adopt rent control with vacancy decontrol (St. 1970, c. 843) than by any specific language differences which arguably support a claim that the authority granted to Boston was more restricted than that granted to Brookline.

Even if we accept the claim that vacancy decontrol will cause rent increases for vacated apartments and harassment of tenants in unvacated apartments, these facts do not guide us concerning the Legislature's intention in its choice of words in the special acts concerning rent control in Boston. Vacancy decontrol has been authorized previously. It is a legislative judgment whether, in light of experience, vacancy decontrol, with any associated disadvantages, should be authorized again and, if authorized, incorporated into the rent control ordinance which is adopted. The facts which the plaintiffs seek to prove are not relevant to the question of the Legislature's intent, as the judge ruled, in effect.

Any remedy for the wrongs asserted by the plaintiffs is legislative, not judicial. We cannot substitute our judgment for that of the city council and the Legislature. Clearly, even with a vacancy decontrol provision, the ordinance may serve some rational purpose, and the plaintiffs do not argue otherwise. See *Russell* v. *Treasurer & Receiver Gen.*, 331 Mass. 501, 508-509 (1954).

*Judgment affirmed.*