GREATER BOSTON REAL ESTATE BOARD vs. CITY OF BOSTON.

Suffolk. April 9, 1986. — July 9, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, & O'CONNOR, JJ.

*Municipal Corporations,* By-laws and ordinances, Home rule, Rent control. *Real Property,* Condominium, Cooperative housing. *Rent Control,* Removal of unit from market. *Constitutional Law,* Home Rule Amendment. *Boston.*

Statute 1969, c. 797, as amended by St. 1970, c. 863, which authorized the city of Boston to control rents and evictions in rental housing units did not confer on the city, either expressly or by necessary implication, any authority to adopt an ordinance providing that the sale of a rental dwelling unit as a condominium or cooperative unit to any person, including an investor, required a removal permit from the city's rent equity board even though the transaction contemplated neither the eviction of any tenant nor the actual removal of any dwelling unit from the rental housing market. [874-878]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 31, 1985.

The case was reported by *Wilkins, J.*

*Richard J. McCarthy (Stuart T. Rossman & Emilie F. Athanasoulis* with him) for the plaintiff.

*Albert W. Wallis,* Assistant Corporation Counsel (*James D. Rose,* Special Assistant Corporation Counsel, *Henry C. Luthin,* Assistant Corporation Counsel & *Kim Nelson* with him) for the defendant.

*James M. McCreight, Robert Laurence Bowens, Richard M. W. Bauer & Frank I. Smizik,* for Massachusetts Tenants Organization, Inc., amicus curiae, submitted a brief.

O'CONNOR, J. In this case, the plaintiff, Greater Boston Real Estate Board, challenges the validity of an ordinance adding § 10A to c. 34 of the Ordinances of 1984 of the City of

Boston.[1] Section 10A provides that a permit must be obtained from the rent equity board (board) before certain rental housing units can be converted to condominiums or cooperative housing. We conclude that § 10A is invalid because the city was not expressly or impliedly authorized by the Legislature to enact it.

On December 31, 1985, the plaintiff filed a complaint in this court seeking declaratory and injunctive relief. The city responded by moving to dismiss the complaint. One of the grounds stated in the city's motion was that the Greater Boston Real Estate Board lacked standing.[2] Subsequent to the filing of the city's motion, the parties entered into a stipulation regarding standing, pursuant to which the city agreed to withdraw its motion to dismiss.[3] In addition to filing the agreement regarding standing, the parties filed a statement of agreed facts and the city filed its answer. On February 10, 1986, a single justice of this court reserved and reported the case to the full bench for decision on the complaint, the answer, the agreement of the parties regarding standing, and the statement of agreed facts.

The facts are as follows. In December, 1985, the Boston city council passed and the mayor approved an ordinance amending the city's rental housing equity ordinance, c. 34 of the ordinances of 1984, by inserting § 10A and by making several changes in the existing provisions of c. 34. Section 10A begins by stating that the provisions of the section apply to all housing accommodations, which c. 34, § 1(n), defines in general terms and with immaterial exceptions as any building

---

[1] We acknowledge the amicus curiae brief submitted by the Massachusetts Tenants Organization, Inc., in support of the city.

[2] In addition to arguing that the plaintiff lacked standing, the city maintained in its motion that the case should be dismissed because the complaint failed to state an actual controversy and because the Attorney General had not been notified of the plaintiff's complaint as required by G. L. c. 231A, § 8. Shortly after the motion to dismiss was filed, the court was notified by letter that the Attorney General had no interest in participating in this case.

[3] As requested by the parties, we note that we do not address the legal issue of the plaintiff's standing. For the purposes of rendering a decision in this case, we assume, without deciding, that the Greater Boston Real Estate Board has the necessary standing to maintain the present lawsuit.

or structure or part thereof rented or offered for rent for living or dwelling purposes. Section 10A(C) then provides that "[i]t shall be unlawful for any person to remove a housing accommodation from rental housing use without having first obtained a removal permit from the Board . . . ." Section 10A also provides that "removal of housing accommodations from rental housing use" includes any activity that would result in the "transfer of legal title of any housing accommodation as a condominium or cooperative unit(s)," including "the sale or transfer of any condominium unit to any person including any investor," § 10A(B)(1) and (1)(C). Thus, under § 10A, the sale of a rental dwelling unit as a condominium or cooperative unit to an investor requires a removal permit even though no tenant may be displaced and the unit remains committed to rental housing.

Section 10A, by its terms, exempts or excepts certain condominium units from its removal permit requirements, but those exemptions and exceptions are not material to our discussion. Also, in light of the provisions of § 10A mandating the granting of removal permits in some situations (§ 10A[D][2]) and the denial of them in others (§ 10A[D][3]), § 10A's provisions concerning the factors to be considered by the board in exercising its discretion to grant or deny a permit (§ 10A[D] [3][1]) are inconsequential to our discussion. Section 10A(D)(1), (2), and (3) are set forth in full in the margin.[4]

---

[4] Chapter 34 of the Ordinances of 1984, as amended, provides in relevant part:

"Section 10A: Removal Permits.
"(D) *Removal Procedure*.
    (1) ·*Criteria*. In determining whether to grant or deny a removal permit the Board shall consider the aggravation of the shortage of safe, decent and affordable rental housing units in the City and its neighborhoods, which may result from the removal especially for tenants of low and moderate income, and handicapped or elderly persons on fixed incomes. In making such determination the Board shall make findings on the following factors:

Section 10A(D)(3) provides: "Except as provided in Section 10A(D)(1) and (2), the Board shall be required to deny a Removal Permit where the Board finds that the purpose of a

(a) The benefits and detriments to the persons whom this Ordinance and this Section seek to protect;

(b) The hardships imposed on the tenant(s) residing in the housing accommodation proposed to be removed;

(c) Circumstances demonstrating hardship and inequity to the applicant seeking a removal permit;

(d) The rate of vacancy in the City of Boston at the time the applicant applies for a removal permit.

". . . .

"(2) *Mandatory Granting of Removal Permit.* The Board shall be required to grant a removal permit where the applicant demonstrates to the Board by sufficient evidence that the removal permit is sought for one of the reasons listed below.

(a) The Owner or purchaser of a condominium or cooperative unit who purchased such unit intends in good faith to occupy such unit as a principal and permanent residence.

(b) A majority of the tenants in a building have unequivocally agreed to purchase such building and convert it to a limited equity cooperative pursuant to General Laws, Chapter 157B.

(c) A majority of the tenants in the building or project will be purchasing their rental unit when it is converted to a condominium or cooperative unit and are intending in good faith to occupy such unit as their principal and permanent residence provided that all such tenants have resided in the building for at least one (1) year prior to the filing of the removal permit application; in such cases, the Board shall grant a removal permit for the entire building or project.

"For purposes of determining a 'majority' under this subsection, all of the tenants residing in a rental unit shall be treated as one tenant.

"For purposes of this subsection, a cancelled deposit check and a copy of the timely executed purchase and sale agreement shall be conclusive proof of the transaction and, where appropriate, a timely and duly recorded condominium unit deed, or an executed cooperative unit proprietary lease, shall also be conclusive proof of such transaction.

"(3) *Mandatory Denial of a Removal Permit.* Except as provided in Section 10A (D)(1) and (2), the Board shall be required to deny a Removal Permit where the Board finds that the purpose of a Permit is to convert a Housing Accommodation to a Condominium or Cooperative unit for sale to an investor, or to sell a unit already converted to an investor."

Permit is to convert a Housing Accommodation to a Condominium or Cooperative unit for sale to an investor, or to sell a unit already converted to an investor." Except where a majority of the tenants in a building agree to purchase their units as permanent residences and a removal permit is issued for the entire building as provided for by § 10A(D)(2)(c), we cannot envision a situation in which subsection (D)(1) or (2) would apply to a permit sought for the purpose of either converting a rental dwelling unit to a condominium or cooperative unit for sale to an investor or of selling to an investor a unit already converted. The bar to obtaining a permit for those purposes, therefore, is practically absolute. Because a removal permit is required for the lawful sale of a rental dwelling unit as a condominium or cooperative unit, and nevertheless in almost all instances is not obtainable, nearly all sales to investors of such units are absolutely prohibited. The issue in this case is whether the city has the authority to bar such sales, including those that do not involve the eviction of tenants nor the actual removal of rental dwelling units from the market.

The plaintiff attacks the validity of § 10A on several grounds. The plaintiff argues that § 10A is invalid because it is not authorized by art. 89 of the Amendments to the Constitution of the Commonwealth (Home Rule Amendment), art. 47 of the Amendments to the Constitution of the Commonwealth (Emergency Powers Amendment), or St. 1969, c. 797, as amended by St. 1970, c. 863 (Boston rent control enabling statutes). Also, according to the plaintiff, the removal permit requirement violates the Constitutions of the United States and Massachusetts. The plaintiff's final argument is that § 10A is invalid because G. L. c. 183A preempts the city from enacting the removal permit requirement.

Although the preamble of the ordinance inserting § 10A in c. 34 states that the authority to enact § 10A is derived from the Home Rule Amendment, the Emergency Powers Amendment and St. 1969, c. 797, as amended by St. 1970, c. 863, and St. 1971, c. 843, the city now argues only that the city's power to enact § 10A is implied from the express powers granted to it by St. 1969, c. 797, as amended by St. 1970, c. 863

(Boston rent control enabling statutes). Accordingly, we confine our discussion of the authority issue to an analysis of those statutes.[5]

In 1969, recognizing that a serious public emergency existed in Boston with respect to the housing of a substantial number of the city's citizens, the Legislature, by special act, granted Boston the power to regulate the rents of certain residential properties. St. 1969, c. 797. In 1970, the Legislature amended St. 1969, c. 797, by further defining the delegated authority with respect to the control of residential rents in the city. St. 1970, c. 863, § 2. In the 1970 amendment, the Legislature also authorized the city to enact an ordinance regulating the eviction of tenants from certain residential rental properties. St. 1970, c. 863, § 3. Thus, by an express delegation of authority, the Legislature empowered the city to respond to its housing emergency by controlling certain residential rents and regulating the eviction of tenants. The Legislature, however, did not expressly grant the city the power to regulate condominium conversions.

The city acknowledges that the Boston rent control enabling statutes are silent with respect to the power to regulate the conversion of existing rental properties to condominiums or housing cooperatives. The city argues, however, that the power to regulate condominium and cooperative housing conversions should be implied from its express legislative grant of authority to control rents and evictions. Specifically, the city contends that the express grant of authority contained in the Boston rent control enabling statutes "carries with it by implication, the authority to take all means reasonably related to effectuate the purposes of the legislation." Thus, according to the city, to determine whether § 10A was validly enacted, the court must decide whether or not § 10A is reasonably related to the legislative purpose embodied in the Boston rent control enabling

---

[5] Both parties recognize that St. 1983, c. 527, which generally enables cities and towns to regulate the conversion of residential rental properties to condominiums, does not apply to Boston. We express no opinion concerning whether St. 1983, c. 527, even if it applied to Boston, would authorize the ordinance in question here.

statutes. In resolving this question, the city observes that every presumption is to be made in favor of the validity of a municipal ordinance or by-law. *Grace* v. *Brookline,* 379 Mass. 43, 49-50 (1979). *Crall* v. *Leominster,* 362 Mass. 95, 101-102 (1972). In light of this presumption, the city argues, this court should conclude that the removal permit requirement established by § 10A is reasonably related to the preservation of affordable rental housing in Boston, and the enactment of § 10A constitutes a valid exercise of the city's authority.

Although the city correctly states that there is a presumption favoring the validity of a municipal ordinance or by-law, it misstates the standard by which the scope of implied municipal authority is determined. The question is not whether the ordinance is "reasonably related" to the legislative purpose embodied in the enabling statute. It is true, as the city argues, that we have applied that standard in cases challenging the validity of administrative regulations. Where an administrative agency has been vested with broad authority to effectuate the purposes of a legislative act, we have held that "the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'" *Levy* v. *Board of Registration & Discipline in Medicine,* 378 Mass. 519, 524 (1979), quoting *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 855 (1977). That deferential standard of review was developed in order to respect the legislative judgment that a particular agency required broad discretion and flexibility to accomplish generally stated legislative goals. See *Consolidated Cigar Corp.* v. *Department of Pub. Health, supra* at 855. But a more narrow standard of review has been established for determining what municipal powers are conferred by implication.

In *Flynn* v. *Cambridge,* 383 Mass. 152, 156-159 (1981), we held that St. 1976, c. 36, which authorized Cambridge to control rents and evictions in rental dwelling units, conferred by implication the power to control removal of units from the rental housing market, and thus provided authority for the enactment of an ordinance regulating the removal of housing from the rental market. We said that "[w]hen analyzing a grant

of power to a municipal government we must keep in mind that 'a grant of an express power carries with it all unexpressed, incidental powers necessary to carry it into effect.'" *Id.* at 158, quoting 3 C. Sands, Sutherland Statutory Construction § 64.02 (4th ed. 1974). We concluded in that case that "the power to control removals from the rental housing market [was] essential to the operation of [the enabling statute], and [was] therefore conferred by implication in [that statute]." *Id.* at 159. The *Flynn* case is authority for the proposition that when an ordinance or by-law has been enacted without authority expressly granted by the Legislature, and is outside the scope of municipal authority provided by the Home Rule Amendment, the ordinance or by-law is valid only if it is necessary to effectuate the legislative intent embodied in the statute relied on as the source of municipal power. A reasonable relationship between the ordinance or the by-law and the statute is not enough. As we recognized in *Church* v. *Boston,* 370 Mass. 598, 601 (1976), "where we are dealing with a subject as to which no local action may be taken without explicit legislative authorization, the scope of that permissible local action is not determined broadly under § 6 of the Home Rule Amendment. . . . The situation . . . is analogous to that existing prior to the Home Rule Amendment where a municipality had 'only those powers which are expressly conferred by statute or necessarily implied from those expressly conferred or from undoubted municipal rights or privileges.' *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, 255-256 (1958)." (Citation omitted.) It is clear from these cases that powers provided by necessary implication must be essential and not merely convenient to the implementation of express powers conferred by statute. Thus, to determine whether § 10A was validly enacted, the question is whether its removal permit provisions are essential to effective regulation of rents and evictions by the city.

In its argument that the Boston rent control enabling statutes impliedly authorized the enactment of § 10A, the city relies heavily and almost exclusively on our decisions in *Grace v. Brookline,* 379 Mass. 43 (1979), and *Flynn v. Cambridge, supra.* But those cases are inapposite. The disputed by-law

amendments in *Grace* regulated the procedure for evicting tenants from apartments converted into condominium units. *Id.* at 44. Those amendments did not preclude condominium conversion altogether and were expressly authorized by St. 1970, c. 843. *Id.* at 51. In *Flynn,* the challenged ordinance provided that any rental unit which was part of the Cambridge rent-controlled housing stock on August 10, 1979, must remain a rent-controlled unit. *Id.* at 156. As we observed in that case, the ordinance "does not prevent an owner from converting his controlled rental units into condominiums, but it does prohibit those condominiums from being used for purposes other than rental housing." *Id.* We concluded in *Flynn* that the power to prohibit the removal of rental units from the city's housing stock was logically necessary for the successful implementation of the Cambridge rent control ordinance.

In the present case there is minimal, if any, logical nexus between the operation of § 10A and the preservation of Boston's rental housing stock. It cannot be said that the city's authority to enact § 10A is necessary to carry out the Legislature's intent embodied in the Boston rent control enabling statutes. Indeed, it is difficult to recognize even a rational relationship between § 10A and the enabling legislation. Under § 10A, investors, who by definition would be likely to offer their units for rent, are prohibited from obtaining permits necessary for con-dominium and cooperative housing transfers even in cir-cumstances where no tenant is evicted and no unit is in fact removed from the rental market. We conclude that the authority to enact § 10A was not conferred on the city by necessary implication.

Therefore, we remand the case to the single justice with instructions that a judgment be entered declaring that § 10A is invalid. In the absence of any indication that the city will disregard this judgment, we decline to direct that an injunction issue as requested by the plaintiff. As the plaintiff does not challenge §§ 2, 3, and 4 of the ordinance inserting § 10A in c. 34, sections unrelated to the insertion of § 10A, we express no opinion as to their validity.

*So ordered.*