McDonald, J.
On February 8, 2001, the plaintiffs, Peter Jarrett (“Jarrett”) and the Springfield Preservation Trust, Inc. (“the Trust”), filed this action against the Springfield Library and Museums Association, Inc. (“the SLMA”) and Thomas Dupre, the Bishop of the Roman Catholic Diocese of Springfield (“the Diocese”), both of whom own property within the QuadrangleMattoon Street Historic District (“the Historic District”); the City of Springfield (“the City”); Frances Gagnon (“Gagnon”), the Chairwoman of the Springfield Historical Commission; and the Springfield Historical Commission (“the Commission”). In their complaint, the plaintiffs sought to enjoin the demolition of the Donoghue House, a building located within the Historic District. They also sought declaratory judgments that: (1) the Donoghue House was transferred to the SLMA subject to existing restrictions imposed by statute and ordinance (Count I); (2) such restrictions apply to real estate owned by the SLMA and the Diocese (Count II); (3) the certificate of non-applicability issued by Gagnon to the SLMA on January 31, 2001 was invalid (Count III); and (4) the portion of §2.46.030A of the General Ordinances of the City of Springfield that exempts the Diocese and the SLMA from the enforcement by the Commission of the Historic District requirements exceeds the scope of its enabling statute, G.L.c. 40C, and denies them equal protection of the laws (Counts IV and V) .[3] On February 25, 2001, the court (Josephson, J.) denied the plaintiffs’ request for injunctive relief, and the SLMA subsequently demolished the Donoghue House. The SLMA then moved to dismiss the complaint or, in the alternative, for summary judgment, arguing that the plaintiffs lack standing and that the case is moot. The plaintiffs filed a cross motion for summary judgment.
*201 On October 15, 2001, the court (Wernick, J.) issued an interim order deferring hearing on the SLMA’s motion to dismiss, or, in the alternative, for summary judgment, and the plaintiffs cross motion for summary judgment. In that order, the court noted the plaintiffs’ acknowledgment that the only claim remaining in this case with respect to each defendant is the alleged illegality of the exemptions of the Diocese and the SLMA in §2.46.030A of the General Ordinances of the City of Springfield, and provided the parties additional time to address that claim.[4] The plaintiffs subsequently filed a consolidated motion for partial summary judgment against all the defendants on the portion of their complaint seeking declaratory relief. For the reasons set forth below, the defendant SLMA’s motion to dismiss or, in the alternative, for summary judgment is allowed in part and denied in part, the plaintiffs’ cross motion for summary judgment is allowed in part and denied in part, and the plaintiffs’ consolidated motion for partial summary judgment is allowed in part and denied in part.
BACKGROUND
Massachusetts General Laws c. 40C, also known as the Historic Districts Act, grants municipalities the power to establish historic districts within their city limits. The statute requires municipalities that choose to establish such districts to create historic district commissions: those commissions have the authority to issue or deny certificates of appropriateness or non-applicability to those who seek to construct, demolish, or alter buildings within the historic district. General Laws c. 40C, §8(a), allows municipalities to exempt from commission review certain categories of “buildings or structures or exterior architectural features” in the historic district, thus permitting the alteration of those buildings, structures, and exterior features upon receipt of a certificate of non-applicability.[5] The same section also provides:
(b) A commission may determine from time to time after public hearing that certain categories of exterior architectural features, colors, structures or signs, including, without limitation, any of those enumerated under paragraph (a), if the provisions of the ordinance or by-law do not limit the authority of the commission with respect thereto, may be constructed or altered without review by the commission without causing substantial derogation from the intent and purposes of this chapter.
In 1972, the City adopted §27-1 of the General Ordinances of the City of Springfield (“City Ordinances”), which established the Commission pursuant to the Historic Districts Act, and Section 27-2, which established the Quadrangle-Mattoon Street Historic District. Subsequent revision of the Ciiy Ordinances re-numbered §27-1 as §2.46.010, inserted §2.46.030 to create several additional historic districts, and re-numbered §27-2 as §2.46.030A. Purportedly acting under G.L.c. 40C, §8(b), the City, in the original ordinance, §27-2, and in the revised ordinance, §2.46.030A, limited the authority of the Commission “so as not to extend to any buildings, structures or properties however owned or controlled by the Springfield Library and Museum Association and Roman Catholic Bishop of the Diocese of Springfield.” Both the SLMA and the Diocese owned certain property within the Historic District when the ordinance was adopted and revised.
In 1984, Thomas Donoghue deeded the house at 67-69 Chestnut Street, located within the Historic District, to the SLMA. On January 31, 2001, SLMA requested and received a certificate of non-applicability from the Springfield Historical Commission as a first step in preparing for demolition of the Donoghue House. The Donoghue House was subsequently demolished.
The Trust is a non-profit charitable corporation organized under the laws of the Commonwealth of Massachusetts. One of its purposes is the preservation of historie structures. Jarrett owns property located at 34 Mattoon Street, Springfield, which is located within the Historic District.
DISCUSSION
When matters outside the pleadings are considered, the court will treat motions to dismiss as motions for summary judgment. See Bell v. Zoning Bd. of Appeals of Gloucester, 429 Mass. 551, 555 (1999). Because the SLMA has presented the court with matters outside the pleadings, including various affidavits attached to its motion, the court will treat the SLMA’s motion as one for summary judgment. See Hiles v. Episcopal Diocese of Massachusetts, 437 Mass. 505, 519 (2002) (holding that, “[w]here affidavits were filed with the motion to dismiss, the judge was entitled to treat the matter as appropriate for summary judgment”).
Summary judgment is appropriate where there are no genuine issues of material fact on any relevant issue raised by the pleadings and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 712-16 (1991). A “genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties’ differing versions of the truth at trial.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (internal citations omitted). “An opposing party may not rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 208 (1989).
A. Standing
The SLMA argues initially that both plaintiffs lack standing to bring the instant complaint. “Standing is an issue of subject matter jurisdiction.” Planning Bd. of Marshfield v. Zoning Bd. of Appeals of Pembroke, 427 Mass. 699, 703 (1998). “To have standing in any *202 capacity, a litigant must show that the challenged action has caused the litigant injuiy.” Slama v. Attorney Gen., 384 Mass. 620, 624 (1981). “Not eveiy person whose interests might conceivably be adversely affected is entitled to (judicial] review.” Group Ins. Comm’n v. Labor Relations Comm’n, 381 Mass. 199, 204 (1980).
The plaintiff has the burden of proof on the issue of standing. Barvenik v. Board of Alderman of Newton, 33 Mass.App.Ct. 129, 131-32 (1992). To satisfy this burden, the plaintiff must show that he is one of a limited class of individuals whose injuiy is special and different from the concerns of the rest of the community. Id. at 132. In other words, aplaintiffs injury must be sufficiently particularized and distinct from general community interests. Nickerson v. Zoning Bd. of Appeals of Raynham, 53 Mass.App.Ct. 680, 682 (2002). Here, Jarrett claims that the mere “existence of the illegal exemptions serves as an ongoing threat to the entire historic district, undermining . . . the stability of the historic nature of [his] neighborhood.” Because Jarrett has alleged no injuiy other than the general detriment suffered by his community, he lacks standing to pursue his claim that the exemptions within City Ordinance 2.46.030A are invalid. SLMA is thus entitled to summaiy judgment on Jarrett’s claim that the exemptions of the SLMA and the Diocese contained in the ordinance exceed the scope of the enabling statute.
The Trust, on the other hand, alleges that the exemptions within the ordinance undermine the preservation efforts to which it is dedicated. Unlike Jarrett, the Trust has suffered a particular and direct injuiy, because the preservation efforts to which it is dedicated have been undermined as a result of the exemptions and the demolition of the Donoghue House. Therefore, the Trust has standing to challenge the validity of the ordinance as exceeding the scope of the enabling statute. SLMA’s motion for summaiy judgment on the ground that the Trust lacks standing to challenge the validity of the exemptions of the SLMA and the Diocese contained in the ordinance is therefore denied.
B. The Validity of the Ordinance
In Count II of the complaint, the Trust seeks a declaratoiy judgment that the restrictions imposed by the Historic Districts Act and the Ordinances establishing the District apply to land owned by the Association and the Diocese within the District. In Count IV, the Trust seeks a declaratoiy judgment that the City Council lacked the authority under its enabling legislation to exempt from the Commission’s controls any buildings, structures, or properties owned or controlled by the Association and the Diocese within the District. In Count V, the Trust seeks a declaratoiy judgment that the portion of §2.46.030A of the General Ordinances of the City of Springfield that exempts the Diocese and the SLMA from the Commission’s controls is void and invalid, as the City Council lacked the power and authority to grant such exemptions. As these claims are similar in substance, this court will address them as a whole.
In support of its claims, the Trust argues that the exemptions betray the purposes of the statute, allow the district to be diminished in away not contemplated or intended by the legislature, and are neither expressly nor implicitly authorized by the statutory language. In response, the SLMA argues that G.L.c. 40C grants the City the discretionary authority to carve out exemptions from the controls of its Commission, and urges this Court to apply broad rules of statutoiy construction.
According to G.L.c. 40C, §2, the purpose of the Historic Districts Act is
to promote the educational, cultural, economic and general welfare of the public through the preservation and protection of the distinctive characteristics of buildings and places significant in the history of the commonwealth and its cities and towns or their architecture, and through the maintenance and improvement of settings for such buildings and places and the encouragement of design compatible therewith.
In subsequent sections, the statute establishes a detailed framework with which municipalities must comply if they choose to create historic districts. This framework undergirds the purposes of “preservation and protection” by requiring the creation of a commission appointed by the mayor or board of selectmen (§4); the issuance of certificates by the commission after consideration of numerous factors, including the historic and architectural value and significance of the site (§§6 and 7); public hearings prior to issuance of certificates (§11); and review procedures for persons aggrieved (§§12 and 13).
The Supreme Judicial Court has acknowledged that historic district commissions must adhere to the purpose of their enabling statute. In Gumley v. Board of Selectmen of Nantucket, 371 Mass. 718 (1977), the Nantucket Historic District Commission, acting under the authority granted by St. 1970, c. 395,[6] denied certificates of appropriateness to the plaintiffs because it concluded that the proposed plans would “interfere with the ‘open space’ aspect of Nantucket.” Id. at 724. The Supreme Judicial Court held that this conclusion “went beyond the statutoiy purpose of ‘preventing developments obviously incongruous to the historic aspects of the surroundings’ and the district. It therefore exceeded the authority of the commission and should have been annulled by the board [of selectmen].” Id.
The ordinance enacted by the City is an even more flagrant betrayal of the statutoiy purpose than the one condemned in Gumley. The exemption of two landowners from the entire framework of controls established in G.L.c. 40C cannot be said to further the ends of “preservation and protection.” To the contrary (and as *203 the facts of this case make clear), the exemptions at issue permit the acquisition and demolition of buildings that would otherwise be protected. Indeed, nothing in the ordinance prohibits the SLMA and the Diocese from entirely eliminating “the distinctive characteristics of buildings and places significant to the history of the Commonwealth and its cities” within the territorial confines of the Historic District by further acquisition and demolition. An exemption wide enough for entire buildings, streets and blocks to fall through[7] defies the plain intent of the legislation.
Although G.L.c. 40C does allow for the reduction of historic districts, it establishes clear procedures for such reduction. Section 3 provides that, “in the case of the enlargement or reduction of an existing historic district,” the commission must conduct an investigation on the historical and architectural significance of the buildings, produce a report, and hold a public hearing. Furthermore, “if the district is to be reduced written notice as above provided of the commission’s hearing on the proposal shall be given to said owners of each property in the district.” The legislature’s requirements of investigation, report, hearing, and written notice indicate its recognition that any departure from the guiding purpose of “preservation and protection” must be undertaken with care and deliberation. The exemptions in the City’s ordinance, on the other hand, permit the District to be whittled away with almost no deliberation whatsoever (simply by receiving a certificate of non-applicability from the Commission), and with no investigation, report, or public hearing. Indeed, the certificate of non-applicability for demolition of the Donoghue House was issued by Gagnon despite the fact that only two of the Commission’s seven members voted to issue the certificate. Permitting the reduction of the District by such casual, near-ministerial means violates both the letter of §3 and the purpose of the Historic Districts Act.
The exemptions of the SLMA and the Diocese violate the spirit of the statute not only because they are the antithesis of “preservation and protection,” but also because they defy the statute’s implication that a historic district is a geographical unit, a mappable entity consisting of blocks, streets, and buildings, with exterior features and other tangible elements. Indeed, pursuant to §3, one prerequisite for the creation, enlargement, or reduction of a district is a report that includes “a map of the proposed district or districts.” While districts could certainly be discussed in terms of legal concepts such as ownership, Value, zoning, and so on, the statute never uses those terms or suggests such categories as relevant considerations or permissible exceptions.
In City Ordinances §2.46.030A, the City claims to draw authority for its exemptions from G.L.c. 40C, §8(b). That subsection, however, authorizes a commission to “determine from time to time after public hearing that certain categories of exterior architectural features, colors, structures, or signs” may be excused from the requirement of commission review, unless the municipality restricts such authorization. The exemptions at issue here do not reflect a determination of the Commission, nor do the pleadings indicate that the exemptions were implemented after a public hearing. Furthermore, §8(b) permits exemptions only for categories of exterior features, colors, signs, or “structures” (statutorily defined as “combination[s] of materials other than a building, including a sign, fence, wall, terrace, walk or driveway”) (emphasis added). The subsection does not authorize a commission, or municipality, to exempt buildings from commission review and does not authorize the exemption of categories based on ownership and control. In short, the language of §8(b) does not stretch to allow the City to carve out categorical exemptions based on ownership and control.
Similarly, the language in §8(a), while a direct grant of authority to the City, does not permit the exemptions at issue. That subsection provides that
[a]ny city or town may provide in the ordinance or by-law establishing a district... that the authority of the commission shall not extend to the review of one or more of the following categories of buildings or structures or exterior architectural features in the historic district:
The subsection then lists eight categories (see footnote 3, supra). The only category of building (as opposed to categories of “structures” or exterior features) listed as a potential exemption is
[t]he reconstruction, substantially similar in exterior design, of a building, structure or other exterior architectural feature damaged or destroyed by fire, storm or other disaster, provided such reconstruction is begun within one year thereafter and carried forward with due diligence.
§8(a)(8). Section 8(a) clearly limits the exemptions that a city may make in its ordinance to the enumerated categories. The list does not permit exemptions based on ownership or control. Therefore, §8(a), like §8(b), fails to authorize the exemptions contained in City Ordinances §2.46.030A.
Massachusetts courts have recognized that, where powers are not expressly granted in a statute, they may be granted by implication where those unexpressed powers are necessary to carry the express powers into effect. See Greater Boston Real Estate Board v. Boston, 397 Mass. 870, 877 (1986). In Flynn v. Cambridge, 383 Mass. 152 (1981), the Supreme Judicial Court held that, pursuant to a statute establishing rent control in the city of Cambridge, the city could enact an ordinance regulating the removal of rental units from the housing market. In reaching that conclusion, the Court reasoned that, without the implied power “to make reasonable regulations govern *204 ing removals from the rental housing market,” the power to control rents would be merely “an interim measure . . . The power to control rents and evictions is not so illusory that it does not comprehend the right and responsibility of preventing removals from its reach.” Flynn at 158-59.
General Laws c. 40C grants the City the power to create historic districts, as well as the power to exempt from the requirements of those districts one or more of a finite set of categories. The power to exempt categories based on ownership or control is not explicitly granted, nor is it necessary to carry out the express powers conferred by the Historic Districts Act. The City can create, reduce, expand, and otherwise maintain its historic districts without the power to exempt based on ownership or control. Unlike in Flynn, the failure to infer this particular power from the ones expressly granted would not impair the City in its exercise of authority, nor would it decrease the effectiveness or longevity of the City’s preservation efforts.
Also distinguishable is Church v. City of Boston, 370 Mass. 598 (1976). The rent control statute at issue in Church permitted the city of Boston to control rents in structures having three or more dwelling units, exempting motels, hotels, inns, and owner-occupied buildings. The Court upheld the validity of a Boston ordinance creating an exemption for vacant buildings, holding that the statute left to the city the questions of whether and how rent control applied to the housing stock not exempted by the statute. “We see no justification for a view that rent control must extend to all housing not excluded by a statute,” the Court wrote, “when that statute says only that a municipality may impose rent control, exclusive of certain areas.” Id. at 600. Here, in contrast, G.L.c. 40C establishes defined procedures that cities choosing to create historic districts must follow for creation and modification of those districts. When cities establish historic commissions, they may limit the authority of those commissions by exempting specific categories of exterior features, structures, and signs from their review. Unlike the statute in Church, c. 40C does not leave avast field open in which the City may determine how and whether the statutory requirements apply. The room for discretion is narrow, the list of exemptions finite. Operating, as it must, within the parameters set by the statute, the City lacks the authority to carve out exemptions at will.
The circumstances of this case are more like those of Greater Boston Real Estate Board. There, the city of Boston, purportedly acting under the authority granted to it by the statute establishing rent control, enacted an ordinance requiring permits for the conversion of rental units to condominiums, even where no tenants were evicted and no units were removed from the rental market. The Supreme Judicial Court held that the power to require permits was not implied by the statute; not only was it unnecessary to carry out the powers expressly granted, but it bore “minimal, if any, logical nexus” to the purpose of the statute. 397 Mass. at 878. Similarly, the power to exempt certain property owners from the controls established in G.L.c. 40C is at cross-purposes with the statute, is unnecessary to carry the explicit powers into effect, and has no logical nexus to the purpose of the Historic Districts Act.
A municipality is not permitted to “wander beyond the confines of the statutory authority under which it alone can act upon the subject matter.” Smith v. Board of Appeals, 319 Mass. 341, 345 (1946). In exempting the SLMA and the Diocese from the Commission’s enforcement of the Historic District controls, the City has wandered too far. For the reasons described above, the exemptions contained in Springfield City Ordinance 2.46.030A are beyond the scope of the authority granted by G.L.c. 40C.[8]
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant SLMA’s Motion To Dismiss Pursuant to Rule 12(b)(1), 12(b)(6), and/or Motion for Summary Judgment is ALLOWED as to the standing of the plaintiff Jarrett to challenge the validity of the city ordinance at issue, and DENIED in all other respects. It is further ORDERED that Judgment shall enter for the Springfield Library and Museums Association, Inc. on the plaintiff Jarrett’s challenge to the validity of the second sentence of §2.46.030A of the General Ordinances of the City of Springfield (formerly §27-2).
It is further ORDERED that the plaintiffs’ Cross Motion for Summary Judgment and the plaintiffs’ Motion for Partial Summary Judgment are ALLOWED as to Springfield Preservation Trust, Inc.’s claim that the City Council lacked the statutory authority to exempt the SLMA and the Diocese from the Commission’s Historic District controls. It is further ORDERED that Judgment shall enter for Springfield Preservation Trust, Inc. on its claim that the second sentence of §2.46.030A of the General Ordinances of the City of Springfield is not authorized by the Historic Districts Act, and, therefore, is invalid and void. Judgment shall enter for Springfield Preservation Trust, Inc. on Counts II, IV, and the portion of Count V that alleges that the City Council lacked the power and authority to grant the exemptions.[9]
It is further ORDERED that Judgment shall enter declaring that the second sentence of §2.46.030A of the General Ordinances of the City of Springfield, which is that portion of said Ordinance that purports to exempt from the authority of the Springfield Historical Commission any buildings, structures, and properties however owned or controlled by the Springfield Library and Museum Association and the Roman Catholic Bishop of the Diocese of Springfield within the Springfield Quadrangle-Mattoon Street Historic District, whether owned or controlled at the time the Ordinance was enacted or thereafter, is not authorized *205 by the Historic Districts Act, is, therefore, beyond the authority of the City, and is invalid.

The plaintiffs indicate in their motion for partial summary judgment that they have abandoned the portion of Count V in which they claim that the ordinance is unconstitutional.

Pursuant to that interim order, the only counts that remain to be addressed by this court are Counts II, IV, and the portion of Count V that alleges that the City Council lacked the power and authority to grant the exemptions. The interim order also acknowledged that the plaintiffs have expressly waived their argument that the exemptions in the ordinance apply to an entity named "the Springfield Library and Museum Association,” but not to an entity named “the Springfield Library and Museums Association, Inc.”

General Laws c. 40C, §8(a), provides the following list of categories that a municipality .may choose to exempt: 1) temporary structures or signs; 2) terraces, walks, driveways, sidewalks and similar structures; 3) walls and fences; 4) storm doors and windows, screens, window air conditioners, lighting fixtures, antennae and similar appurtenances; 5) the color of paint; 6) the color of roofing materials; 7) signs used in connection with a home occupation, professional purpose, or non-residential use; and 8) the reconstruction, substantially similar in design, or a building, structure or exterior architectural feature damaged or destroyed by fire or other disaster.

St. 1970, c. 395, as amended by St. 1972, c. 708, established a Historic Nantucket District. The Gumley court indicated that it would read that statute “in the light of the more general statutes providing for zoning, G.L.c. 40A, and for historic districts, G.L.c. 40C.” 371 Mass. at 719.

In an opinion issued to the Springfield Historical Commission on July 12, 1991, Springfield’s Assistant City Solicitor confirmed that, under the ordinance, “every time a piece of property is bought or comes into the ownership of [the SLMA or the Diocese],... it is then exempt from the jurisdiction of the commission.”

The SLMA also argues that the Trust’s claims are barred by two earlier cases addressing the application of G.L.c. 40C, Springfield Preservation Trust, Inc. v. Roman Catholic Bishop of Springfield, 7 Mass.App.Ct. 895 (1979), and Springfield Preservation Trust, Inc. v. Springfield Historical Commission, 380 Mass. 159 (1980). Those cases held that the Superior Court lacked jurisdiction because the Trust failed to join the City as a defendant, failed to notify the Attorney General of its claims, and was not entitled to standing under the older statutory definition of “person aggrieved.” Here, the Trust included the City as a defendant, and provided appropriate notice to the Attorney General of its constitutional claim (which has since been abandoned). Additionally, the definition of “person aggrieved” in G.L.c. 40C, §5 was amended in 1983 to apply to “any charitable corporation in which one of its purposes is the preservation of historic structures or districts,” a definition that includes the Trust. For these reasons, the Trust’s claims are not barred by the two pre-1983 cases cited by the SLMA.

Pursuant to the interim order entered by the court (Wernick, J.) on October 15, 2001, these counts are the only ones that remain to he addressed.