Agnes, A.J.
INTRODUCTION
In this civil action the defendants and plaintiffs in counterclaim, Town of Petersham and Petersham Historical Commission (“the Town”) seek a preliminary injunction to order the plaintiffs, Thomas and Laura Webber (“the Webbers”) to (1) cease operating an outdoor wood boiler located on their property at 21 South Main Street, Petersham, Massachusetts (“the Property”), (2) to remove the Boiler, and (3) to remove and cease constructing an enclosure structure for the boiler unless and until they obtain a Certificate of Appropriateness from the Historic District Commission.
FACTUAL BACKGROUND
The essential facts are not in dispute. The Webbers applied to the Petersham Historic Commission (the Commission) for a Certificate of Appropriateness to place a wood burner and a fence on their front property. On November 8, 2004, the Commission denied the certificate. On November 23, 2004 the Webbers filed an appeal of the Commission’s denial decision. On or about December 16,2004, the Webbers installed the wood burner in the front of their property. On or about February 7, 2005 the Webbers placed a fence around the burner. After the first denial the Webbers again applied to the Commission for a designation of non-applicability to install a fence. The Commission denied this second attempt. Nonetheless, the Webbers proceeded to install the burner.
DISCUSSION
I
In deciding whether to grant a preliminary injunction, the court is required to perform a multi-part analysis. Packaging Industries Group. Inc. v. Cheney, 380 Mass. 606, 616-17 (1980). Generally, the court must determine whether the moving party has demonstrated a likelihood of success on the merits, and that it faces a substantial risk of irreparable harmlosses that cannot be repaired or for which compensation will not be adequate after final judgmentif the motion for the preliminary injunction is not granted. Id. at 617 & n. 11. If the moving party has met this burden, the court must then engage in a balancing test in which the irreparable harm faced by the moving party is compared to the harm that an injunction would inflict on the other party. “If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. at 617. In balancing these factors, “(w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. Furthermore, in an appropriate case, “the risk of harm to the public interest also may be considered.” Brookline v. Goldstein, 388 Mass. 443, 447 (1983). See also LeClair v. Town of Norwell 430 Mass. 328, 337 (1999); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
In a case such as this, the moving party need not show irreparable harm when they are “the government or a citizen, acting as a private attorney general to enforce a statute or a declared policy of the Legislature.” LeClair, supra, 430 Mass, at 331-32 (1999). In such circumstances, a court must first consider whether the plaintiffs prevailed on the merits, and then determine whether injunctive relief will benefit or harm the public interest. Id., citing Mass. CRINC, supra, 392 Mass. 79, 89 (1984). Hence, the public interest is a factor in this Court’s determination in whether to grant either preliminary or permanent injunctive relief. Id. The court must instead first determine whether there is a likelihood of success on the merits and then determine whether the requested order promotes public interest or, alternatively, that equitable relief will not adversely affect the public. Id. The moving party bears the burden of showing a likelihood of success. John T. Callahan & Sons, Inc. v. City of Malden, 430 Mass. 124 (1999).
II
The Town of Petersham’s Historic Commission Bylaws, Section 6.B.3[2] lists certain exceptions to the *244 Commission’s jurisdiction by removing the requirement of a Certificate of Appropriateness. Fences are listed as one such exception. The Historic Commission’s By-laws, Section 5a[3] states that Certificates of Appropriateness are necessary only for features which are subject to view from a public way within the Historic District. The plaintiff contends that the fence that surrounds the challenged boiler is not within the scope of the by-law as fences “and similar appurtenances” are specifically exempt from the jurisdiction of the Commission. The plaintiff further asserts that because the boiler is behind the exempted fence it is no longer visible from a public way in the Historic District and therefore the boiler itself is also exempt from the Commission’s jurisdiction.
The adage that a picture is worth a thousand words is no more true than in this case. Each of the parties submitted photographs of the fence and the enclosed boiler. In the context of the by-law in question, the term “appurtenance,” which is not specifically defined in the by-law, is commonly understood to mean a structure close to or adjacent to a dwelling house. See Brady v. City Council 59 Mass.App.Ct. 691, 696 (2003) (Court notes that a proposed outdoor patio for which a special permit was required and which was located directly adjacent to the plaintiffs’ yard, “strongly supports the conclusion that its character is that of an exclusive appurtenance to the plaintiffs’ property”). Therefore, the fence in question qualifies as an “appurtenance” as that term is used in the by-law and is exempt from the reach of the by-law.
However, the fact that the fence is exempt and that the boiler itself is behind it and not visible from the street does not end the inquiiy. The picture supplied by the parties make it unmistakably clear that when the boiler is operating there is a significant amount of smoke produced which is visible as it rises above the top portion of the fence. The by-law requires a homeowner to obtain a Certificate of Appropriateness relating to the “exterior architectural features” of any “building or structure” erected in an historic district and visible from the street. A common sense reading of the by-law leads to the conclusion that the smoke and particulate by-products resulting from the normal operation of a boiler and which are plainly visible from the street should be regarded as an integral part of the boiler in the same way that an antenna rising above a radio transmission tower or a decorative wind-direction element atop a home or building would be regarded as an integral part of the structure, and thus not exempt from the reach of the by-law simply because the principal part of the structure itself remains hidden from view. Alternatively, it may be reasoned that the visibility of the smoke and the particulate by-products produced by the boiler serve to make the boiler visible from the street within the meaning of the by-law even though the structure producing the smoke is not visible.
The defendants correctly urge this court not to adopt an interpretation of the by-law that would create an exception that would swallow up the rule.[4] See Jarrett v. Springfield Library and Museums Association, Inc., et al., Hampden Superior Court, 2003 WL21246549 *4, 16 Mass. L. Rptr. 200, citing Singer Friedlander Corp. v. State Lottery Comm’n., 423 Mass. 562 (1996). The interpretation advanced by the plaintiffs is not simply to exempt from the requirement of a certificate a small structure adjacent to their home and enclosed by a standard fence such as a well, a patio, a garden with a shed etc. which would not be visible from the street, and would remain so under all circumstances. Here, the nature of the structure enclosed by the fence is such during its normal operation the by-products its produces are visible from the street. This structure thus is in violation of both the letter and the spirit of the by-law.
Ill
Ordinarily, the court is required to balance the risk of irreparable harm to the parties in light of each party’s likelihood of success on the merits. Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). The court must then balance the harms that would result from the issuance of the injunction. Packaging Industries Group, Inc. v. Cheney, supra, at 617. Typically, only where the balance of those harms clearly weighs in the favor of the moving party may an Injunction properly issue. Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, supra. Here, however, the injunction is sought by a municipality seeking to enforce a municipal by law adopted in furtherance of a public policy of the Commonwealth. See Dennis Housing Corp. v. Zoning Board of Appeals, 439 Mass. 71, 73 (2003) (discussing public policy purposes behind historic commission in Barnstable County).
“(WJhere a statutory violation is alleged, the judge should specifically consider how the statutory violation affects the public interest.” LeClair, supra, 430 Mass, at 332, citing Mass. CRINC, supra, 392 Mass, at 89-90.
As noted above, the defendants have established a likelihood of success on the merits. With regard to the balance of harms, it is sufficient to note that the purpose of the by-law in question is plainly to establish a set of uniform standards relating to the appearance of certain visible structures within the historic district. The failure to issue and injunction in these circumstances jeopardizes the ability of the municipality to advance the legitimate public interests underlying the establishment of a historic district such as historic preservation, beautification, and community enrichment. This court finds that the granting of a preliminary injunction is thus in the best interest of the public. See LeClair, supra, 430 Mass, at 332; Mass. CRINC, supra, 392 Mass, at 89-90. On the other hand, there is no showing in this case that the plaintiffs are *245 without alternative means of supplying heat for their home including supplying heat by relocating the boiler to another location on their property. Furthermore, given the equitable nature of this remedy, it is important also to consider that the plaintiffs made the choice to construct and install a boiler after the Commission denied their application for a Certificate. Thus, the plaintiffs gambled on the outcome of this proceeding. For this reason, the court gives less weight to the burden imposed on the plaintiffs by the grant of injunctive relief.
IV
This court is of the view that after a full review and trial on the merits a court is likely to agree with the Town’s interpretation of its by-law, that without in-junctive relief the Town will suffer irreparable harm, and that on balance the harm suffered by the plaintiffs as a result of compliance with the injunction does not outweigh the interests of the Town in the enforcement of its by-law.
ORDER
For the following reasons set forth above, the defendant’s motion for preliminary injunction is ALLOWED.

Section 6 states in pertinent part: “B. [T]he commission shall have no authority over the following building structures and features, and they may be erected or changed within the historical district without the filing of an application for, or the issuance of, a Certificate of Appropriateness ... 3. Walls, fences, terraces, storm doors and windows, lighting fixtures, antenna, and similar appurtenance . . .”

Section 5a states in pertinent part: “No building or structure except as provided in Section 6 shall be erected within the Historical District unless and until an application for certificate of appropriateness as to exterior architectural features which are subject to view from a public way or street shall have been filed with the Commission and either a certificate of appropriateness or certificate that no exterior architectural features subject to view from a public way or street is involved shall have been issued by the Commission.”

Defendant’s Memorandum in Support of a Preliminary Injunction, pg. 9.